IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

     Plaintiff,

v.                                   Civ. 11-676 RB/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, NEW MEXICO;
Luna County Detention Center
Administrator, JOHN SUTHERLAND, JR., in his
Individual and official capacities; and JANE DOE(S)
and JOHN DOE(S),

     Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO COMPEL

This matter comes before the Court on Plaintiff's Motion to Compel ("the Motion"). *Doc. 34.* The parties have fully briefed the Motion (*see docs. 34, 40, 42*) and the Court has held a hearing (*see doc. 56*). At the hearing, with the exception of one dispute, the Court expressed its ruling and reasoning. The instant Order reflects the oral ruling and resolves the remaining issue. The Motion will be granted in part and denied in part.

**Background**

This case stems from the fatal tasering ("the incident") of Decedent Christopher Aparicio ("Decedent"). *Doc. 1*, Ex. A at 3. Plaintiff filed the complaint in this case acting as the personal representative of Decedent and his heirs. *Id.* at 1.

On March 17, 2011, officers at the Luna County Detention Center ("LCDC") took Decedent into custody and booked him. *Id.* ¶ 7. He was highly agitated and under the influence of methamphetamines. *Id.* ¶8. Detention center personnel pepper sprayed Decedent and repeatedly tasered him. When he experienced medical distress, EMTs took him to a hospital where he died. *Id.*, ¶¶ 8-9.

In Count II of his complaint, Plaintiff raises claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. *Id.* at 4. Plaintiff alleges that Defendants were responsible for culpably bad practices, policies, training, customs, and procedures with respect to the treatment of detainees, safety, and Taser use, and that these practices and other related activity caused Decedent's death *Id.* at 4-5. Plaintiff alleges that Defendants engaged willfully and wantonly in this wrongdoing, and that punitive damages are therefore appropriate. *Id.*, ¶ 23.

In Count III, Plaintiff asserts that he raises New Mexico state tort claims under N.M. Stat. Ann. § 41-4-6.[1] *Id.* at 6. This claim has the same factual basis as Count II;

---

[1] Plaintiff seems to have made a typographical error, as the cited statute, which concerns negligence in operating public facilities, appears inapposite. *See N*.M. Stat. Ann. § 41-4-6(A). Plaintiff may instead mean to cite the following statute: "The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury [or] wrongful death . . . resulting from assault, battery . . . or deprivation of any rights, privileges or immunities secured by the constitution

Plaintiff frames it as the tortious breach of "a duty to provide a reasonably safe environment to protect [Decedent] from foreseeable risk . . . ." *Id.,* ¶ 28.

**Analysis**

Plaintiff's Motion to Compel addresses two interrogatories and fourteen requests for production. *See doc. 34*, Ex. 2. These discovery requests concern various items such as video recordings of the incident, information about the LCDC personnel involved in the incident, and information about the training of the LCDC personnel involved in the incident. *Id.*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

---

and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12.

*Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211 (D. Kan. 2002). "However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 553 (D. Colo. 2009).

*Interrogatory Number 17*

Interrogatory Number 17 states: "Identify all inmates who were present in the vicinity of the Plaintiff at the time he was restrained and subdued by Luna County Detention Center personnel, and all inmates who witnessed the circumstances of Plaintiff's restraint and subsequent death." *Doc. 34*, Ex. B at 10.  In their objections and at the hearing, Defendants argued that the interrogatory was vague in its reference to the "vicinity" of the incident and argumentative in that it inaccurately implied that Decedent died at the LCDC.  *Id.* at 4, *doc. 56* at 3.  At the hearing, Defendants stated that they would have no objection to a more narrowly tailored request.  *Id.*  Plaintiff agreed to submit such a request.  *Id.*  The Court will therefore order Plaintiff to submit a more precise discovery request on this issue, and will order Defendants to answer it.

*Interrogatory Number 23 and Requests for Production Numbers 2 and 3*

At the hearing, Plaintiff stated that Interrogatory Number 23 and Requests for Production Numbers 2 and 3 had become moot.  The Court will therefore deny the Motion as to these requests.

*Request for Production Number 4*

Request for Production Number 4 states: "Produce all video and photographic recordings made at Luna County Detention Center on the day of the Plaintiff's death including but not limited to those showing the Plaintiff and those showing any and all of the persons identified in your answers to interrogatories numbers 2-8 and 15." *Doc. 34*, Ex. B at 7.

At the hearing, Defendants explained that they had produced all such recordings. *See doc. 56* at 7.  Those recordings include: (1) a video of the incident; (2) a video showing the room through which Decedent was taken by the EMTs after the incident; (3) a video of Decedent being placed in the ambulance in the parking lot; and (4) a video, presumably from the Taser Cam,[2] which shows nothing distinct, but contains audio recordings of screams.  Defendants explain that these recordings were preserved as part of the internal investigation of the incident.  All other video recordings, to include recordings of events just before and just after the preserved recordings, were deleted pursuant to an automatic process which records over events more than thirty days old.  *Doc. 56* at 4.

As all existing recordings responsive to this request have been produced, the Court will deny the Motion as to this discovery request.  However, the Court notes that the person who selected which recordings to preserve (and which clips from those recordings to preserve) may have relevant information as to the preservation decisions

---

[2] A Taser Cam video is the video recording that some models of tasers, including the one used in the incident, produce when used.

and, perhaps, material which was not preserved.  Therefore, Defendants will formally respond to Plaintiff with the identity of any individuals involved in those decisions.

*Requests for Production Numbers 7, 10, 11, 12, 13, and 14*

Requests for Production Numbers 7, 10, 11, 12, 13 and 14 address the materials that the LCDC used for training purposes.  *Doc. 34*, Ex. B at 7-9.

At the hearing, Plaintiff stated that LCDC officers have testified that, as part of their training, they received brochures, viewed videos, and took written tests, but that Defendants failed to produce such materials.  *Doc. 56* at 5.  After discussions with the Court, Defendants stated that they were prepared to produce training videos, pepper spray brochures, and written tests if they were available.  *Id.* at 6.

Because Plaintiff's claims include, in part, claims that Defendants provided culpably deficient training to the officers involved in the incident, and that this deficient training causally contributed to Decedent's death (*see doc. 1*, Ex. A ¶¶ 22-23), discovery requests addressing the content and manner of the training are therefore relevant to Plaintiff's claims and reasonably calculated to the discovery of admissible evidence. Training materials are only relevant, however, to the extent that they were used to train the officers involved in the incident.  The Court will therefore grant the Motion as to these discovery requests to the extent that there are videos and standard tests provided to the officers in training; Defendants need to provide only materials that were used to train the nine officers involved in the incident.  Defendants shall include brochures

relating to pepper spray that otherwise conform to the instruction to produce.

*Request for Production Number 8*

Request for Production Number 8 states: "Produce all manuals and other documents relating to the use of Tasers and stun guns by [LCDC] personnel including all documents received from the manufacturers of such equipment." *Doc. 34*, Ex. B at 8.[3]

Materials about the proper use of tasers that Defendants received from Taser International could reasonably lead to admissible evidence supporting Plaintiff's claims. However, this conclusion is only true with respect to materials that relate to the taser model that the officers used against Decedent are relevant. Therefore, the Court will order Defendants to produce the materials requested, but only to the extent that they relate to the taser model the officers used in the incident. This production would include documentation which is specifically directed at the particular model used and documentation which applies generally to all models of tasers from Taser International.

*Request for Production Number 9*

Request for Production Number 9 requests personnel documents. It states: "Produce all evaluations, job applications, training records, and disciplinary and corrective action documents contained in the personnel files of all employees identified in your answers to interrogatories numbers 4 through 8 and 14." *Doc. 34*, Ex. B at 8. At

---

[3] At the hearing, Plaintiff also raised a related issue. Plaintiff believed that then-warden Krehbiel had sent certain materials to the manufacturer for investigation, and that Defendants presumably received something in response. *Doc. 56* at 6. Plaintiff indicated that he had not received any such report. Defendant, however, asserted that the report had been disclosed, but agreed to send an additional copy.

the Hearing, Plaintiff stated that, of the nine officers present at the incident, one tased Decedent, one pepper sprayed him, and others took part in subduing him.  *Doc. 56* at 7. Defendants argued that, of the officers involved in the incident, some participated actively, whereas others played the role of mere bystanders.  *Id.*  Defendants argued that only the personnel documents of those officers who participated actively in subduing Decedent should be produced, whereas producing those documents for the other officers would improperly violate their privacy interests.  *Id.*  Plaintiff argued that Defendants should produce, in addition to the personnel documents of the officers who participated in subduing Decedent, the personnel documents of the medical officer and the supervisor present at the incident.  In aid of its decision on this matter, the Court has reviewed the video of the incident provided by Defendants.

The Court agrees that, absent a further justification, an officer's mere presence at the incident is not sufficient to warrant the production of documents from that officer's personnel file.  The personnel records should only be produced if the officer was actively involved.  However, having reviewed the video, it is no easy matter to determine which officers participated actively in subduing Decedent.  In fact, the Court is able to confidently conclude only that two particular officers were not sufficiently

involved to justify disclosure of their records.  The Court has indicated in the attached image which two officers do not appear to have participated actively. [4]

With respect to whether the supervisor's records should be produced as well, the Court looked to determine if the incident was of such a nature that a supervisor could have influenced events.  Two fact make such a determination difficult.  First, the video does not include sound, so it is impossible to determine if supervisory instructions were or could have been expressed.  Second, the Court has not been told and cannot determine which of the individuals pictured in the video is the supervisor (or supervisors).  Nonetheless, it appears that the incident began with a period of rising tension and hostility which lasted for about a minute before exploding in a much more violent and rapid altercation.  It appears, therefore, that the supervisor may have had an opportunity to influence the situation if they were observing it in real time.  Accordingly, assuming that the supervisor is pictured in the video or was otherwise observing the incident in real time, their personnel records are subject to production.

With respect to the medical officer, the Court is persuaded that their personnel records are subject to disclosure.

Therefore, the Court will order Defendants to produce the requested personnel documents for the seven officers not indicated in the image attached to this order.  Defendants will also produce the personnel record of the medical officer.  Finally,

---

[4] The image has been captured from the video Defendants provided to the Court at 15 minutes and 17 seconds into the video.

Defendants will produce the personnel records of the supervisor assuming that the supervisor is pictured in the video or was otherwise observing the incident in real time.[5] Defendants may delay disclosure of these records until a protective order is in place.

*Requests for Production Numbers 15 and 16*

Request for Production Number 15 states: **"**Produce copies of all memos, logs, photographs, video recordings, electronically stored information, letters, policies, procedures and all other documents and materials reviewed and created by all persons who investigated the Plaintiff's death and the circumstances surrounding his death for and on behalf of [LCDC]." *Doc. 34*, Ex. B at 9. Request for Production Number 16 states: "Produce all reports resulting from investigation of Plaintiff's death and the circumstances surrounding his death which you have created and received." *Id.* at 10. At the hearing, Plaintiff stated that Defendants produced a limited report. *Doc. 56* at 8. Plaintiff stated that this document referred to other documents and audio recordings of witness statements created during the investigation, and that Defendants failed to produce these items. *Id.* Plaintiff stated that, according to the report, the investigator gave the recordings to then-warden Krehbiel, and that Defendants have failed to contact Krehbiel in this matter. *Id.* at 8-9.

For their part, Defendants explained that Krehbiel no longer works for Defendants and may now be incarcerated, but that Defendants would nonetheless make

---

[5] As should be clear, if the supervisor or the medical officer is one of the two officers indicated in the attached image, their personnel records should be disclosed.

a good-faith effort to contact Krehbiel and learn from him the location of the recordings. *Id.* at 9.  The Court will therefore order Defendants to do so and communicate their findings to Plaintiff.

*Request for Production Number 25*

Request for Production Number 25 states: "Produce the job descriptions for every employee who had contact with Plaintiff."  *Doc. 34*, Ex. B at 11.  At the Hearing, Defendants suggested that the request be limited to the nine people shown in the video of the incident, and Plaintiff stated that would be acceptable.  *Doc. 56* at 9.  The Court will therefore order Defendants to produce the job descriptions of the nine LCDC officers shown in the video of the incident.


**IT IS SO ORDERED.**


_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE