IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

    Plaintiff,

v.                                                                         Civ. 11-676 RB/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, NEW MEXICO;
Luna County Detention Center
Administrator, JOHN SUTHERLAND, JR., in his
Individual and official capacities; and JANE DOE(S)
and JOHN DOE(S),

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS

THIS MATTER comes before the Court on Defendants' motion for sanctions. *Doc. 45*. The parties have fully briefed the matter and the Court is fully advised. Defendants request that the Court sanction Plaintiff for failure to properly answer Defendants' interrogatories regarding: (1) Decedent's criminal history, (2) Decedent's drug use prior to his death, and (3) Decedent's income at the time of his death. *Doc. 45* at 12. Defendants argue that documents produced after Plaintiff answered Defendants' interrogatories, along with a deposition, show that Plaintiff "willfully disregarded his discovery obligations . . . ." *Id*. Defendants ask the Court to sanction Plaintiff by requiring Plaintiff to (1) "make a reasonable and diligent inquiry into the

Interrogatories propounded by the Defendant," (2) "correct the misrepresentations made in his discovery responses," and (3) "pay the Defendants' costs and fees in obtaining this relief." *Id*. Plaintiff denies wrongdoing and asks the Court to award Plaintiff's costs for responding to Defendants' motion for sanctions. *Doc. 49* at 1.

The Court finds that Plaintiff's participation in discovery does not merit sanctions, and will therefore deny the motion.

*Background*

This case arises from the fatal tasering ("the incident") of Christopher Aparicio ("Decedent"). *Doc. 1*, Ex. A ¶¶ 8-9. Defendants took Plaintiff into custody at the Luna County Detention Center ("LCDC") on March 3, 2011.[1] *Doc. 1*, Ex. A ¶ 7. During booking, Defendants subdued Decedent. *Id.* ¶ 8. As part of this process, Defendants tasered him. *Id.* EMTs then removed Decedent to a hospital where he later died. *Id.* ¶ 9.

On December 9, 2011, Plaintiff provided answers to Defendants' first set of interrogatories. *Doc. 25*. Defendants argue that the answers to Interrogatories 4, 5, 6, 11, 13, 16 and 20 merit sanctions. *Doc. 45* at 2-4.[2] Interrogatories 4, 5, and 20 concern Decedent's income; Interrogatories 6 and 11 concern his criminal history; Interrogatory

---

[1] The Complaint states that the incident occurred on March 17, and that Decedent died the same day. *Doc. 1* ¶¶ 7-9. More recent documents indicate that the incident occurred on March 3. *See, e.g., doc. 45*, Ex. A at 7.

[2] Defendants cite Interrogatory 14, but clearly intend to cite Interrogatory 13. Defendants state that "Luna County sought a description of Aparicio's activities in the 48 hours prior to his encounter with Luna County Detention Center officers" and cite Interrogatory 14. *Doc. 45* at 4. Interrogatory 13 requests this information, whereas Interrogatory 14 bears no relation to it. *See id.* at 7-8.

2

13 concerns his behavior during the time leading up to the incident. *See doc. 45*, Ex. A at 3-4, 6-7, 9, 10.

Plaintiff sent its responses to Defendants' first set of requests for production on December 19, 2011. *Doc. 27*. Plaintiff states that he received documents relating to Decedent's criminal history from Canyon County on December 21, 2011, and from Emmett County in mid-January 2012, and that he produced all of these documents on January 26, 2012. *Doc. 49* at 4-5. Defendants deposed Kathryn Villa on January 17, 2012. *Doc. 45*, Ex. 3 at 1. Defendants argue that Villa's statements about Decedent's child-support payments undermine Plaintiff's statements about Decedent's income. *Doc. 45* at 3.

*Legal Standards*

Rule 33 requires interrogatories to "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Rule 26 requires a party that has inaccurately answered an interrogatory to "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *Id*. 26(e)(1)(A). This requirement applies only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." *Id.*

If a party fails to comply with their discovery obligations, the opposing party may bring a motion under Rule 37. *Id*. 37(a)(3). "If a party fails to provide

3

information . . . as provided by Rule 26(a) or (e), the party [may be sanctioned at trial] unless the failure was substantially justified or is harmless." *Id.* 37(c)(1). In addition to sanctions at trial, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]" *Id.* 37(c)(1)(A). The court may order other appropriate sanctions as well. *Id.* 37(c)(1)(C). If a Rule 37 motion is denied, the court "must, after giving opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." *Id.* 37(a)(5)(B).

"[D]istrict courts enjoy 'very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'" *Lee v. Max Intern., LLC*, 638 F. 3d 1318, 1320 (10th Cir. 2011) (quoting *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

4

*Analysis by Issue*

**Income**

Interrogatory 4 asked Plaintiff if he was "claiming any damages for lost earnings, lost income, or lost employment or economic opportunities" and went on to ask that, if so, Plaintiff supply Decedent's employment information at the time of his death and "the total amount of income, wages or economic opportunity that you claim to have lost and how such amount was calculated." *Doc. 45*, Ex. A at 3-4.

Plaintiff answered that he did seek damages for the economic harms referred to in the interrogatory, stated that Decedent "was not employed at the time of his death" and gave the contact information for two of his previous employers, indicating that Decedent had worked for one of them from 2004 to 2007, failed to indicate when he had worked for the other, and stated, "The amount of Plaintiff's lost wages and economic opportunity has not yet been determined." *Id.* at 4.

Interrogatory 5 asked for Decedent's annual income for each year from 2006 to 2011. *Id.* Plaintiff stated that he did not at that time know Decedent's income for the years in question, but that the answer would "be supplemented as responsive information bec[ame] available." *Id.*

Interrogatory 20 stated: "Please list any and all sources of income that [Decedent] had at the time of his death. With regard to each, please list the name[,] address, and telephone number of each source and the amount of income each source provided

5

[Decedent] on a monthly basis." *Id.* at 10. Plaintiff answered: "[Decedent] was unemployed at the time of his death." *Id.* at 11.

On January 17, 2012, Defendants deposed Kathryn Villa. *Doc. 45*, Ex. C at 1. Villa is the maternal grandmother of Decedent's daughter, Kiana, of whom Villa has custody. *Id.* at 4, l. 2-11. Defendants questioned Villa as to the quantity, frequency, and consistency of the financial support that Decedent provided for his daughter. *Id.* at 5-9. Villa stated that Decedent did not make regular child support payments, but did contribute financially to his daughter's support. *Id.* In answer to the question, "[H]ow often did he pay child support?" she stated, "He – well, he rarely – he gave me whatever he could, every now and then. I never kept track. If she needed something, I would let him know, and he would call and he would send it. I never asked questions how, but he would make sure it would get there." *Id.* at 8, l. 21-25. She stated, "He didn't pay regular child support, no." *Id.* at 9, l3. Defendants asked, "How much money do you think he paid you during his lifetime?" *Id.* at 9, l. 4-5. "Maybe $100 to $200 a month, except for the first year," she replied. *Id.* at 9, l. 6-7. Defendants then asked, "He started paying $100 to $200 a month?" *Id.* Villa answered, "Yeah, every now and then, he would send money. Not money orders, cash. He would show up, leave it off . . . . Drop by to see if she needed Pampers, stuff like that. And I knew he would send them, you know." *Id.* at 9, l. 9-13. Later, Defendants again asked, "And you think he paid you $100.00 to $200.00 a month from 2010 forward?" *Id.* at 18, l. 23-24. Villa

6

replied, "Yeah, give or take. And a little before that, after my daughter was incarcerated, he would send special money every now and then because he was out of town. And when he found out she was incarcerated, he tried to help as much as he could." *Id.* at 18-19, l. 25, 1-4.

Defendants argue that "Plaintiff failed to disclose . . . [Decedent's] sources of income . . . ." *Doc. 45* at 6. Defendants assert that Villa's deposition, at the very least, demonstrates that Plaintiff did not reasonably investigate the question of Decedent's income. *See id.* at 8.

Plaintiff maintains that decedent was unemployed at the time of his death, that he was not receiving any form of government assistance, and that neither Plaintiff nor Decedent's parents know Plaintiff to have had an illegal source of income at the time of his death. *Doc. 49* at 7.

Defendants have failed to establish that Plaintiff's answers on the issue of income were false or incomplete. It does not appear disputed that Decedent did not have any regular legal source of income, such as a legal job or government assistance. Therefore, the only remaining potential sources of income would be charity from a non-government source or illegal activity. It appears that Plaintiff's counsel questioned Decedent's mother, with whom he lived at the time of his death, and she was unaware of any such income.

Villa's testimony does not undermine this conclusion. At most, Villa's statements indicate that Decedent gave her money irregularly over a period of several years. It does not establish any sort of stable income which could be readily investigated. To the extent that it raises the inference of illegal income, it is unclear what further investigation Plaintiff should have reasonably conducted.

Defendants have failed to show that Plaintiff's statements concerning Decedent's income were either not "complete and correct" to the best of Plaintiff's knowledge, or that Plaintiff did not make them after a reasonable inquiry. The Court will therefore deny the motion with respect to this issue.

**Criminal History**

Interrogatory 11 asked how many times, where, when, and why Decedent had been incarcerated. *Doc. 45*, Ex. A at 6-7. Plaintiff stated that Decedent "was incarcerated in Idaho in approximately November of 2009 for possession of methamphetamine at Emmett County Jail, 410 E. 1st St., Emmett, Idaho, 83617, and at the Canyon County Jail, 219 N. 12th St., Caldwell, Idaho, 83605 in approximately April of 2010." *Id.* at 7. Plaintiff made no further answer to the interrogatory and did not object to it. *See id.*

Interrogatory 6 asked if Decedent had "ever been arrested, charged with or convicted of any crime . . . cited for a traffic violation, or had a warrant issued for [his]

8

arrest," and asked Plaintiff to supply the date, location, and disposition of every such event. *Id.* at 9.

Plaintiff answered: "Yes. [Decedent] was convicted of possession of methamphetamine in the State of Idaho. The particulars of the conviction are not known at this time." Plaintiff objected to the interrogatory to the extent that it sought information about "charges and convictions of the [Decedent] which occurred when [Decedent] was a juvenile on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence." *Id.* Plaintiff also stated, "The personal representative of Plaintiff's estate is gathering information on Plaintiff's prior arrest and conviction record and will supplement this answer when such information becomes available." *Id.*

A questionnaire filled out by Decedent on October 12, 2010 indicates he had been convicted of shoplifting or vandalism, a parole or probation violation, a drug charge, two weapons offenses, burglary or larceny, and assault. *Doc. 45*, Ex. B at 1, 4.[3] The questionnaire indicates that decedent had been incarcerated for a total of four years, most recently in February 2010. *Id.* at 4. Plaintiff produced this document on December 19, 2011. *Doc. 49* at 9 n.5.

---

[3] Defendants cite to this document. *Doc. 45* at 2. Defendants do not indicate the exact nature of the document. *See id.* It is untitled, but appears to be an intake questionnaire for a substance abuse rehabilitation program. *See doc. 45*, Ex. B.

9

According to records from the Emmett County Jail, Decedent has been arrested repeatedly and charged with a variety of crimes. *See doc. 45*, Ex. F. Plaintiff came into possession of Decedent's criminal records from Canyon County on December 21, 2011, and the records from the Emmett County Jail in mid-January 2012; Plaintiff sent these records to Defendants on January 26, 2012. *Doc. 49* at 5.

In her deposition, on January 17, 2012, Villa stated, "I know that he was in Springer, the youth detention center . . . ." *Doc. 45*, Ex. A at 13 l. 3-4. Decedent's mother, however, has stated that Decedent did not serve time at a detention center in Springer. *Doc. 49* at 6-7 n.4.

Based on the foregoing, Defendants argue that Plaintiff failed to disclose Decedent's criminal history. *Doc. 45* at 8. Defendants contend that "Plaintiff either did not make a reasonable investigation before responding or chose to bury the information in the documentation rather than accurately and completely respond[ing] to the discovery requests." *Id*.

Plaintiff responds that the initial answers were made after inquiring with Decedent's father and Plaintiff explained that he was "gathering information on [Decedent]'s prior arrest and conviction record and [would] supplement [its] answer when such information [became] available." *Id*. at 9. Plaintiff explains that he did in fact supplement the answers with the documents from the various jurisdictions as they came in. *Doc. 49* at 5; *see also Doc. 45*, Ex. A at 9.

10

Defendants do not dispute that the documents sent by Plaintiff contained the information about Decedent's criminal history which was missing from the original interrogatory answer. Instead Defendant's complaint is that, instead of just producing the documents, Plaintiff should have formally supplemented the interrogatory answer. Plaintiff, for his part, believes that simply producing the document is sufficient under Rule 33(d). *Doc. 49* at 6. Plaintiff is mistaken. Rule 33(d) does give a party the option to produce records as an interrogatory answer in certain circumstances. Fed. R. Civ. P. 33(d). However, this provision is limited to "a party's business records." *Id*. Clearly, the documents containing the additional information about Decedent's criminal history are not Plaintiff's business records and, therefore, Rule 33(d) is inapplicable.

Pursuant to Rule 26(e)(1)(A), a "party . . . who has responded to an interrogatory . . . must supplement or correct its . . . response . . . if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A). There is no dispute that Plaintiff learned that his answers to the "criminal history" interrogatories were not complete. The question is whether subsequently sending the "criminal history" documents essentially excuses the duty to supplement because "the additional or corrective information [was] otherwise made known to the other parties during the discovery process or in writing." The Court concludes that it does not. To

11

find otherwise would render the several provisions of Rule 33 moot. First, permitting a party to provide incomplete interrogatory answers and then "supplement" under Rule 26 only with documentation would sidestep the limitations on the use of documentary responses under Rule 33(d). Second, it would significantly limit the practical ability to introduce interrogatory answers at trial which is explicitly permitted under Rule 33(c). In the context of interrogatories, only where the supplementing party explicitly alerts the opposing party that subsequently provided documentation impacts an earlier interrogatory answer is the "additional or corrective information [sufficiently] made known" to fall within the Rule 26 supplementation exception. From the pleadings, it appears that Plaintiff did not do so, and thus did not satisfy the supplementation requirement by the mere disclosure of the documents.

When considering the significance of this failure, however, the Court must look at it within the context of the discovery process. As ordered by the Court, "[s]upplementation under Rule 26(e) is due thirty days after discovery of evidence that requires supplementation." *Doc. 11* at 11.[4] Therefore, supplementation based upon the information contained in the Canyon County records[5] would have been due on January 24, 2012. Supplementation based upon the information contained in the Emmett

---

[4] The Court issued an order setting pretrial deadlines on October 14, 2011. *Doc. 14*. This order stated that "the Joint Status Report filed by the parties is adopted as an order of the Court, except to the extent that it conflicts with" the Court's orders. *Id.* at 1.

[5] It is undisputed that these records were received by Plaintiff on December 21, 2011. *Doc. 49* at 5.

12

County records[6] would have been due in mid-February. On January 18, 2012, the Court issued an order staying "all proceedings and case management deadlines from January 27, 2012," until the parties informed the Court that they had received certain documents from third parties. *Doc. 33.* As those documents have not yet been received, the stay is still in place. The thirty-day deadline for supplementation is a "case management deadline" and therefore was stayed by the Order. As such, the supplementation based on the Emmett County records is not past due. Technically, because the stay did not become operative until three days after the supplementation based on the Canyon County records came due, the stay does not excuse the failure as to that information. Nonetheless, it demonstrates the inappropriateness of sanctions for this failure. Based on the parties' request, the stay did not become operative on the day the order was signed (January 18, 2012) only to permit certain already scheduled depositions to occur. *Doc. 32.* But for the parties' request to delay the stay for a reason unrelated to supplementation of prior discovery responses, the stay would have also excused the supplementation based on the Canyon County records. Moreover, imposition of sanctions for a failure to supplement which fell due three days before a total discovery stay went into effect hardly seems appropriate. *See* Fed. R. Civ. P. 37(c)(1) (certain sanctions should not be granted if violation is harmless).

---

[6] It is undisputed that these records were received by Plaintiff in mid-January, 2012. *Id.*

Because the Court concludes that Plaintiff's production of documents relating to Decedent's criminal history does not satisfy its duty to supplement the related interrogatory answers, Plaintiff will be ordered to submit new and complete answers to those interrogatories. The supplements will be due fourteen days after the stay is lifted, but can be provided earlier. No other sanction will be granted related to Plaintiff's answers to interrogatories concerning Decedent's criminal history.

**Decedent's Drug Use shortly before his Death**

Interrogatory No. 13 stated: "Please list all activities that [Decedent] engaged in within the 48 hours preceding [Decedent's] incarceration at the [LCDC]. Please include the names, addresses and telephone numbers of all individuals with whom he had contact, the individual from whom he procured any and all drugs and alcohol, the addresses he visited and all of his activities." *Doc. 45*, Ex. A at 7. Plaintiff answered:

> On the morning of March 3, 2011, [Decedent] was taken to see his probation officer by his mother. He then returned to his mother's house and stayed with [h]is mother until she left for work. Plaintiff was arrested at approximately 8:30 p.m. on March 3, 2011, at 1425 E. Birch St. Deming, New Mexico 88030, was taken to Mimbres Regional Hospital for a medical clearance and then transported to Luna County Detention Center. Plaintiff had contact with his mother, Olga Rodriguez, Officer James Fetrow, and Corporal Aurora Granillo. The identity of the person from whom Plaintiff purchased drugs is unknown.

*Id.* at 7-8.

An "initial assessment form" from the Mimbres Memorial Hospital, filled out some time after 11:24 p.m. on March 3, 2001, apparently as part of the medical clearance

referred to in the answer, states, "cc pt on meth here for medical clearance for jail pt agitated restless somewhat paranoid about people coming in room and seeing him unable to sit still. Last did meth at 4-5 in am." *Doc. 45*, Ex. D at 1. Plaintiff sent this document to Defendants on December 19, 2011. *Doc. 49* at 8.

 Defendants argue that Plaintiff's answer is a misrepresentation because it did "not state that [Decedent] ingested drugs during within [sic] that 48 hour time period." *Doc. 45* at 4; *see also Doc. 45* at 8 ("Plaintiff submitted false evidence by failing to disclose . . . [Decedent's] drug use . . ."). The Court does not agree. It is not entirely clear that Plaintiff should have known that "all activities" would necessarily include the ingestion of drugs. Certainly, a broad reading of the word "activities" would include taking drugs, but such a broad reading would also include eating lunch. In other words, without further exposition, it was reasonable for Plaintiff to neglect to include drug use in the description of activities. Such is the risk run when broad words are used in interrogatories. Concluding that neglecting to include drug use in Plaintiff's answer was a simple misunderstanding is corroborated by other facts. First, Plaintiff's answer, while conceding ignorance about Decedent's drug supplier, does not dispute that he obtained drugs in the relevant time period. Moreover, Plaintiff explicitly alleged in his Complaint that Decedent was high on methamphetamine when he was taken into custody. *See doc. 1*, Ex. A ¶ 8. Finally, on December 19, 2011, Plaintiff sent a copy of the intake document indicating that Decedent had self-reported methamphetamine use on

15

the day of the incident.7 *Doc. 49* at 8. As explained above, if the Court concluded that Plaintiff's interrogatory answer was erroneous, mere production of this document would not suffice for supplementation under Rule 26. Its production, however, is further evidence that Plaintiff believed it was fully answering the "activity" interrogatory.

As such, the Court will deny Defendant's motion for sanctions related to Plaintiff's interrogatory answer regarding Decedent's drug use.

*Plaintiff's Request for Sanctions*

In his Response, Plaintiff seeks an order "awarding the Plaintiff reasonable attorney's fees incurred in having to respond to [this] motion." *Doc. 49* at 12. If a Rule 37 motion is denied, the court "must, after giving opportunity to be heard,8 require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." *Id.* 37(a)(5)(B). However, the "court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." The court has denied all the sanctions sought by Defendants. Therefore, the first question is whether Defendants' motion was "substantially justified." On the issues of

---

7 As explained above, if the Court concluded that Plaintiff's interrogatory answer was erroneous, mere production of this document would not suffice for supplementation under Rule 26. Its production, however, is further evidence that Plaintiff believed it was fully answering the "activity" interrogatory.
8 The "opportunity to be heard" requirement is met here because Plaintiff requested sanctions in its pleading and Defendant had the opportunity to file a reply. *See Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 666-67 (D. Kan. 2004).

16

income and drug use, the Court finds that it was not. Notwithstanding Defendants' repeated insistence to the contrary, nothing supports the finding that Plaintiff's answers were a "willful abuse of the discovery process." *Doc. 45* at 2; *see also id*. at 4 ("various misrepresentations in his answers to interrogatories demonstrate Plaintiff's willful disregard for his discovery obligations . . . ."); *id*. at 5 ("the totality of the circumstances demonstrate Plaintiff's willful disregard for his discovery obligations"). Defendants claim that they are prejudiced because the briefing on the instant motion would have been unnecessary had Plaintiff fulfilled its discovery obligations. *Id.* at 8. However, as sanctions are completely inappropriate on any of the bases urged by Defendants, it is the motion itself which was an unnecessary escalation of minor discovery issues. As such, the Court will order Defendants to pay 75%[9] of the reasonable expenses of the Plaintiff incurred responding to the motion.

     Wherefore, IT IS HEREBY ORDERED that Defendants' Motion for Sanctions, (*doc. 45*), is DENIED;

     IT IS FURTHER ORDERED that Plaintiff submit new and complete answers to the interrogatories related to Decedent's criminal history within fourteen days after the stay is lifted;

     IT IS FURTHER ORDERED that, within seven days of the entry of this Order,

---

[9] This discount is based on the fact that the Court granted some relief to Defendants in the form of ordering supplemental answers on the issue of criminal history.

17

Plaintiff shall file an affidavit outlining the expenses incurred in responding to the instant motion. Defendants' objections to the amount or reasonableness of those expenses shall be filed within seven days of the filing of the affidavits.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE