IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

    Plaintiff,

v.                                          Civ. 11-676 RB/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, JOHN KREHBIEL,
JOSH ELFORD, JONATHAN CHAVEZ,
JOHN ROBERT MCGRAEL, and
YOLANDA EDWARDS,

    Defendants.

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND VIOLATION OF CIVIL RIGHTS**

    Plaintiff for his Second Amended Complaint states:

    1.    This is an action for monetary damages brought pursuant to the New Mexico Wrongful Death Act, the New Mexico Tort Claims Act, and 42 U.S. C. §1983 which arises out of the events which occurred during Plaintiff's brief detention at the Luna County Detention Center in Deming, New Mexico, on March 3, 2011.

    2.    Plaintiff decedent Christopher Aparicio was a resident of Deming, Luna County, New Mexico.

    3.    Plaintiff's personal representative, Charles Kretek is an attorney licensed to practice in the State of New Mexico and was appointed as the personal representative of the Estate of David Christopher Aparicio by the Sixth Judicial District Court of the State of New Mexico.

    4.    Defendant Board of County Commissioners of Luna County (hereinafter

"Defendant Luna County") is a political subdivision of the State of New Mexico and is named as a defendant pursuant to §4-46-1 NMSA 1978.  At all material times, Defendant Board of County Commissioners of Luna County owned and operated the Luna County Detention Center located in Luna County, New Mexico.

   5. Defendant Josh Elford is a resident of Luna County, New Mexico, who, at all material times, was employed by Luna County Detention Center as a detention officer and acted under color of state law and within the scope and course of his employment.  Defendant Elford is being sued in his individual capacity.

   6. Defendant Jonathan Chavez, is, upon information and belief, a resident of Texas who at all material times was employed as a detention officer at the Luna County Detention Center and acted under color of state law and within the scope and course of his employment. Defendant Chavez is being sued in his individual capacity.

   7. Defendant John Robert McGrael is, upon information and belief, a resident of Colorado, who, at all material times, was employed by Luna County Detention Center as a medical officer and acted under color of state law and within the scope and course of his employment.  As a medical officer, Defendant McGrael was responsible for providing timely and adequate medical care to all persons detained and incarcerated at LCDC.  Defendant McGrael is being sued in his individual capacity.

   8. Defendant Yolanda Edwards is a resident of Luna County, New Mexico, who, at all material times, was employed by Luna County Detention Center as a Sargent who was responsible for supervising detention officers and other LCDC employees, and acted under color of state law and within the scope and course of his employment.  Defendant Edwards is being

2

sued in her individual capacity. Upon information and belief, Defendant Edwards was the highest ranking jail employee on site at the time of the incident giving rise to Plaintiffs claims.

9. Defendant John Krehbiel, is upon information and belief a resident of Luna County, New Mexico, who at all material times was employed as the warden of the Luna County Detention Center, acted under color of state law and within the scope and course of his employment, and was the final policymaker for Luna County Detention Center. Defendant Krehbiel is being sued in his individual capacity.

10. All of the events giving rise to Plaintiff's claims occurred in Luna County, New Mexico.

11. Plaintiff provided Defendant Board of Commissioners of Luna County with timely notice of his intent to bring suit against that defendant in accordance with the requirements of the New Mexico Tort Claims Act by providing written notice of such intention by letter dated May 19, 2011.

12. This court has jurisdiction over the parties to this litigation and the subject matter of the Plaintiff's federal claims under 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367. Venue is otherwise proper in this Court.

**ALLEGATIONS COMMON TO ALL CLAIMS**

13. Defendant Luna County is obligated to provide for the confinement of detainees and prisoners detained and incarcerated under the County's jurisdiction, §33-3-3 NMSA 1978, and one of its principal duties is to hold accused persons in custody.

14. The mission of the Luna County Detention Center (hereinafter "LCDC") is to

establish a safe, secure and humane facility for persons detained and incarcerated in that facility.

15. The LCDC is a public building within the meaning of §41-4-6 NMSA 1978.

16. Defendants Krehbiel Elford, Chavez , McGrael, and Edwards were at all material times both public employees within the meaning of §41-4-6 NMSA 1978, and law enforcement officers within the meaning of §41-4-3.D NMSA 1978.

17. At all material times, Defendants Krehbiel, Elford, Chavez, McGrael and Edwards acted within the scope of their respective duties as employees of LCDC.

18. Defendant Luna County is liable for the acts of Defendants Krehbiel, Elford, Chavez, McGrael, and Edwards, as well as all other employees of LCDC, under the doctrine of *respondeat superior* with respect to Plaintiff's state law claims under the Tort Claims Act and Wrongful Death Act.

19. On March 3, 2011, Plaintiff made emergency calls to law enforcement officials in Deming, New Mexico, for the purpose of turning himself in for violating the conditions of his parole on criminal convictions in the State of Idaho, and volunteered to the law enforcement personnel who detained him that he had recently taken methamphetamine.

20. Deming Police officers took the Plaintiff to a local area hospital and obtained a medical clearance which cleared the Plaintiff to be incarcerated.

21. Deming police personnel then took Plaintiff to LCDC where Plaintiff arrived at approximately 11:19 p.m. on March 3, 2011.

22. At all times the Plaintiff was in the Luna County Detention Center, Plaintiff occupied the status of a pre-trial detainee having not been convicted of the charges for which he was being detained.

23. At all material times, Defendants knew the Plaintiff was under the influence of methamphetamine.

24. Defendant Luna County had a policy, promulgated and enforced by Defendant Krehbiel, pursuant to which LCDC employees segregated intoxicated individuals who arrived at that facility for the purpose of being booked, and detained them in a holding cell until those individuals sobered up and were cooperative.  Plaintiff was never placed in a holding cell.

25. Plaintiff was cooperative when he arrived at the facility and was cooperative until he was placed in a booking cage and told that he needed to be photographed as part of the booking process.

26. After being told his photograph needed to be taken, Plaintiff began to repeatedly question jail employees why he needed to be photographed, repeatedly asked what he had done to warrant being jailed and began to display signs of agitation and mental disturbance.

27. When Plaintiff continued to respond in this manner, Defendants Elford and Chavez arrived in the booking area in response to another jail guards' request for assistance.  The employees responsible for booking the Plaintiff did not ask for supervisory assistance in accordance with jail policy and practice.

28. Defendant Elford confronted the Plaintiff at the door of the booking cage where Plaintiff was situated, informed the Plaintiff that he needed to be photographed, and ordered Plaintiff to proceed to the area where detainees' photographs are taken and became increasingly agitated.

29. The Plaintiff did not comply with this order and instead continued to repeat his questions about why he was in jail and what had he done to be put in jail.

5

30.     Defendant Elford then drew his Taser and tased Plaintiff in the chest three times in quick succession, causing Plaintiff to experience severe pain.

31.     Defendant Elford did not provide Plaintiff with a reasonable opportunity to comply with the order that he proceed to a different area of the booking room to have his picture taken, and did not pause long enough between taser applications to ascertain whether Plaintiff was capable of understanding and complying with that order.

32.     While Plaintiff was being tased, Defendant Chavez sprayed the Plaintiff with pepper spray which Defendants knew would restrict and cause inflammation of Plaintiff's airways.

33.     While being Tased for a third time, the Plaintiff tried to escape the source of his intense pain and ran out of the booking cage toward the other end of the room where he was being held.

34.     Defendants Elford, Chavez and McGrael, as well as several other detention officers, ran after the Plaintiff, tackled the Plaintiff to the ground and ended up in a "dog pile" on top of the Plaintiff who lay on the ground in a prone position.

35.     At no time prior to Plaintiff being tackled by several detention officers had Defendant McGrael or Edwards provided any supervision to the detention officers involved in attempting to take the Plaintiff's photograph.

36.     After a brief struggle, the Plaintiff's arms were pulled behind his back and were handcuffed while the Plaintiff remained in a prone position.  Upon information and belief, Defendants Chavez and Elford placed their weight on the Plaintiff's upper back and neck area while other jail guards held the Plaintiff arms and legs.

6

37. After the Plaintiff had been subdued in this manner, Defendant Edwards arrived on the scene. At that and all subsequent times during the incident involving the Plaintiff, Defendant Edwards was the highest ranking jail employee on site, and was the "Officer in Charge" who was responsible for supervising all of the other jail employees present at that time, and for ensuring that those employees performed their duties in compliance with jail policies and procedures and standards governing the operation of detention facilities such as LCDC.

38. Once Plaintiff was handcuffed, Plaintiff stopped resisting efforts to restrain him, became silent, displayed overt signs of being unable to breathe properly, and thereafter posed no threat of harm to Defendants or any of the detention officers present.

39. Once Plaintiff had been handcuffed, order in the booking area was restored.

40. Defendants Elford, Chavez, and several other LCDC employees continued to hold onto and physically restrain the Plaintiff in the prone position for several minutes after he had become silent and unresponsive by, among other things, placing weight and pressure on Plaintiff's upper back and neck, and holding his legs and bending them forward toward Plaintiff's back.

41. During this time Defendants McGrael and Edwards did not offer any direction or supervision to the detention officers restraining the Plaintiff in a prone position, exercise control over their actions, or instruct or order those employees to change their course of action. Defendant Edwards failure to supervise was a proximate course of the Plaintiff's injuries and death.

42. Instead, Defendant Edwards carried out directions given by subordinate employees.

7

43.     During this time, Plaintiff continued to display overt signs of being unable to breathe properly.

44.     During this time, Defendants, specifically including Defendants McGrael and Edwards, made no effort to stand the Plaintiff up, turn the Plaintiff over or otherwise put him in a position where he could breathe properly and instead kept the Plaintiff in the prone position despite the known, substantial risk to Plaintiff presented by this action.

45.     Plaintiff was held in this position for approximately eight minutes after he became unresponsive and before Defendant McGrael instructed Defendant Edwards to call for emergency medical assistance.

46.     At least fifteen minutes transpired between the time Plaintiff became unresponsive and stopped resisting efforts to restrain him, and the time emergency medical personnel arrived on scene.  Defendants Elford and Chavez, as well as other LCDC employees, restrained Plaintiff in the prone position during this entire time.

47.     At no time did Defendant Edwards or Defendant McGrael, or any other supervisory employee assume control over the actions of the individual defendants or other detention officers involved in the restraint of the Plaintiff, take any effort to supervise their actions or instruct them to change their course of action.

48.     Defendant McGrael did not provide any medical care or assistance to the Plaintiff after he had been restrained other than to take Plainitff's carotid pulse on one occasion, and break an ammonia capsule under Plaintiff's nose in an unsuccessful attempt to revive Plaintiff.

49.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered a collapsed lung, brain anoxia, and a heart attack.

50.     Plaintiff was removed from LCDC by emergency medical personnel approximately forty five minutes after he was brought to that facility.

51.     Plaintiff was taken to a local area hospital where he was pronounced brain dead. Plaintiff died on March 17, 2011, after life support systems were turned off.

## COUNT I
## NEGLIGENCE AND WRONGFUL DEATH CLAIM
## UNDER TORT CLAIMS ACT

52.     Plaintiff incorporates by reference all preceding allegations as if fully set forth herein and brings this claim against all Defendants pursuant to §41-4-1 et seq NMSA 1996 and §41-2-1 et seq NMSA 1996.

53.     Defendant Luna County owed Plaintiff a duty to exercise reasonable care for the protection of the life and health of the Plaintiff, and to provide the Plaintiff with a reasonably safe environment and protect him from foreseeable risks of harm to his person.

54.     The duty of reasonable care which Defendant Luna County owed to the Plaintiff included, but is not limited to the duty to provide a reasonably safe and secure environment, protect Plaintiff from the risk of being injured as a result of the application of excessive force, to adequately supervise jail personnel, to provide timely and adequate medical care to detainees, to adequately train Luna County employees including Defendants Chavez, Elford and McGrael in subjects including the risks posed by positional asphyxia and the enhanced risk of positional asphyxia for persons suffering from drug intoxication, excited delirium and other medical and psychological conditions, the proper use of Tasers and pepper spray and the risks of harm posed by the use of Tasers and pepper spray, the provision of timely and adequate medical care to detainees, the segregation of intoxicated detainees, restraint techniques, and the use of force

against detainees, and to adequately supervise the actions of detention officers and other jail employees to ensure their actions comply with jail policies and training.

55.     Defendants breached the above-referenced duties when, among other things, they negligently failed to maintain a safe and secure environment, used excessive force in restraining the Plaintiff, failed to supervise jail personnel involved in the restraint of and provision of medical care to the Plaintiff, failed to properly handle the booking of Plaintiff who Defendant Luna County knew was intoxicated on methamphetamine and psychologically disturbed, failed to place Plaintiff in a holding cell until he was no longer intoxicated and was compliant, failed to adequately train Defendants Chavez, Elford and McGrael in positional asphyxia and physical restraint, and the proper use of Tasers and pepper spray and the risks posed by their use, failed to train Defendant McGrael in the provision of medical care to detainees, the risks posed by positional asphyxia in situations where persons are restrained in the prone position, are intoxicated or under the influence of drugs, or are suffering from psychological problems, used excessive force in restraining the Plaintiff and continuing to use excessive force to restrain the Plaintiff after he offered no resistance and became unresponsive, failed to monitor the Plaintiff's need for medical assistance, failed to place the Plaintiff upright or on his side once he was handcuffed and was not resistant, failed to provide any medical care to the Plaintiff after he had been restrained and had become unresponsive Defendants Chavez and Elford's restraint of Plaintiff and in Defendant McGrael's non-provision of medical care to the Plaintiff.

56.     Plaintiff suffered severe injuries and wrongful death as a direct and proximate result of the above-described actions of the Defendants and is entitled to an award of compensatory damages which include funeral and burial expenses, pain and suffering, lost

earning and lost earning capacity, the value of household services, the value of Plaintiff's life apart from his earning capacity, the aggravating circumstances surrounding the negligent and wrongful acts of the Defendants, the emotional distress to the Plaintiff's parents, children and grandparents caused by the loss of society, guidance and companionship with and by Plaintiff, the loss of guidance and counseling to Plaintiff's children and the loss to Plaintiff's beneficiaries of other expected benefits that have monetary value.

WHEREFORE, Plaintiff demands that judgment be entered in his favor and against all Defendants awarding him compensatory and punitive damages in an amount to be determined at trial which include but are not limited to all of the damages recoverable for wrongful death, costs incurred in bringing this action, and such other and further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF CIVIL RIGHTS - EXCESSIVE FORCE

57. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein and brings this claim against Defendants Elford, Chavez and McGrael under 42 U.S.C. §1983 and the 14th Amendment to the United States Constitution.

58. At all times the Plaintiff was in the custody of Defendant Luna County, Plaintiff was a pre-trial detainee.

59. The amount of force used by Defendants Elford, Chavez and McGrael to restrain the Plaintiff was grossly excessive in relationship to the threat posed by the Plaintiff and the need for force presented by the Plaintiff's actions.

60. These Defendants' actions and omissions inflicted grievous and ultimately fatal

injuries on the Plaintiff.

61.     These Defendants' actions were motivated by excessive zeal and malice toward the Plaintiff as a result of the Plaintiff's refusal to comply with their directives and orders, Plaintiff having resisted efforts to restrain him and return him to the booking cage, Plaintiff's attempt to run away from Defendants after being Tased multiple times, and the subsequent injury of Defendant McGrael in the Defendants' restraint of Plaintiff, and amounted to an abuse of the Defendants' official power which is shocking to the conscience.

62.     The Plaintiff suffered severe injuries and death as a proximate result of these Defendants' actions for which he is entitled to an award of compensatory damages in an amount to be determined by the finder of fact.

63.     The Defendants' actions were willful, wanton and in reckless disregard for the Plaintiff's rights entitling the Plaintiff to an award of punitive damages in an amount to be determined by the finder of fact.

WHEREFORE, Plaintiff demands that judgment be entered in his favor against Defendants Elford, Chavez and McGrael awarding him compensatory and punitive damages in an amount to be determined at trial, attorney's fees pursuant to 42 U.S.C. §1988, costs incurred in having to bring this action and such other and further relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF CIVIL RIGHTS - DELIBERATE INDIFFERENCE
## TO SERIOUS MEDICAL NEEDS

64.     Plaintiff incorporates all preceding allegations as if fully set forth herein and brings this claim against Defendant McGrael under 42 U.S.C. §1983 and the 14th Amendment to the United States Constitution.

65.     The above-described actions of the Defendants caused the Plaintiff to become unable to breathe and to become unresponsive to stimulus, even after Defendant McGrael attempted to revive him by breaking an ammonia capsule under his nose.

66.     The Defendants' actions which caused the Plaintiff to suffer extreme personal injuries and harm were so obvious at the time the Plaintiff was being that even a lay person would easily recognize the need for medical attention.

67.     Plaintiff's medical needs were so serious they ultimately resulted in his death.

68.     Defendant McGrael was aware of the fact that Plaintiff was highly intoxicated on methamphetamine, had been engaging in irrational behavior, had just been Tased three times in rapid succession, pepper sprayed, engaged in a physical struggle in which several guards had thrown the Plaintiff to the ground and forcibly restrained Plaintiff, and had suddenly gone from being resistant and being in a state of what Defendant McGrael believed may have been excited delirium, to being unresponsive and unable to breathe properly.

69.     Defendant McGrael knew that, given these symptoms, there was a substantial risk of harm due to positional asphyxia, brain anoxia, heart attack, and death to the Plaintiff.

70.     Defendant McGrael recklessly and deliberately disregarded and was deliberately indifferent to that risk and failed to provide any medical care to the Plaintiff and failed to promptly summon emergency medical personnel to aid the Plaintiff.

71.     The Plaintiff suffered severe injuries and death as a proximate result of these Defendants' actions for which he is entitled to an award of compensatory damages in an amount to be determined by the finder of fact.

72.     The Defendants' actions were willful, wanton and in reckless disregard for the

Plaintiff's rights entitling the Plaintiff to an award of punitive damages in an amount to be determined by the finder of fact.

WHEREFORE, Plaintiff demands that judgment be entered in his favor against Defendant McGrael awarding him compensatory and punitive damages in an amount to be determined at trial, attorney's fees pursuant to 42 U.S.C. §1988, costs incurred in having to bring this action and such other and further relief as the Court deems just and proper.

## COUNT IV
## SUBSTANTIVE DUE PROCESS VIOLATION

73. Plaintiff incorporates all preceding allegations as if fully set forth herein and brings this claim against Defendant Elford, Chavez and McGrael under 42 U.S.C. §1983 and the 14th Amendment to the United States Constitution.

74. The acts and omissions of Defendants Elford, Chavez and McGrael which are described in this Complaint were clearly unjustified by any legitimate law enforcement objective, were taken with deliberate indifference to and in reckless disregard of the Plaintiff's right to life protected by the fourteenth amendment to the United States Constitution and proximately caused the Plaintiff to lose his life.

75. The Defendants' actions and omissions which led to the Plaintiff's death shock the conscience.

76. The Plaintiff incurred substantial damages as a proximate result of the these Defendants' acts and omissions, and is entitled to an award of compensatory damages in a amount to be determined by the finder of fact.

77. The acts and omissions of these Defendants were reckless and wanton and entitle

the Plaintiff to an award of punitive damages in an amount to be determined by the finder of fact.

WHEREFORE, Plaintiff demands that judgment be entered in his favor against Defendants Elford, Chavez and McGrael awarding him compensatory and punitive damages in an amount to be determined at trial, attorney's fees pursuant to 42 U.S.C. §1988, costs incurred in having to bring this action and such other and further relief as the Court deems just and proper.

## COUNT V
## BATTERY

78. Plaintiff incorporates all preceding allegations as if fully set forth herein and brings this claim against Defendants Elford and Chavez pursuant to the New Mexico Tort Claims Act §42-4-12 NMSA 1996.

79. Upon information and belief, during the course of restraining the Plaintiff, the Plaintiff became unresponsive and unable to breathe properly.

80. Upon information and belief, after Plaintiff became unresponsive, Defendants Elford and Chavez battered the Plaintiff by continuing to apply weight and pressure to the Plaintiff's neck and upper back and keeping him in a prone position.

81. Plaintiff did not consent to Defendants Elford and Chavez touching him in this manner.

82. Defendant Elford and Chavez's actions proximately caused the Plaintiff to suffer injuries for which he is entitled to an award of compensatory damages in an amount to be determined by the finder of fact.

WHEREFORE, Plaintiff demands that judgment be entered in his favor against

Defendants Elford, Chavez and McGrael awarding him compensatory and punitive damages in an amount to be determined at trial, costs incurred in having to bring this action and such other and further relief as the Court deems just and proper.

## COUNT VI
## FAILURE TO TRAIN AND SUPERVISE

83.     Plaintiff incorporates all preceding allegations as if fully set forth herein and brings this claim against Defendants Luna County Board of County Commissioners, John Krehbiel and Edwards under 42 U.S.C. §1983.

84.     The Plaintiff refused to comply with the Defendants' order to move out of the booking cage and proceed to have his picture taken, and then resisted efforts to restrain him.

85.     Inmates and detainees who refuse to comply with orders and instructions of jail detention officers and who resist efforts to restrain them are usual and recurring situations in jails such as Luna County Detention Center.

86.     Detention officers at Luna County Detention Center routinely encounter and are required to restrain persons who are emotionally unstable, intoxicated by drugs or alcohol, have been engaged in a physical struggle, and who exhibit symptoms of psychosis.

87.     Defendants Luna County and Krehbiel were aware of the risks of severe injury and death posed by positional asphyxia, and were aware of the particular risks posed by positional asphyxia in persons who are intoxicated, psychotic, emotionally unstable and in a state of excited delirium.

88.     Defendants Elford and Chavez used excessive force to restrain the Plaintiff which violated the Plaintiff's constitutional rights.

89. Defendants Luna County and Krehbiel failed to train jail personnel in the risks of severe physical injury and death posed to detainees, and in particular, the risks to intoxicated and emotionally disturbed persons and persons with excited delirium posed by positional asphyxia, and the physical restraint of person in the prone position and permitted Luna County Detention Center employees to use excessive force against detainees and inmates in a persistent and with spread manner.

90. Defendants Luna County's and Krehbiel's failure to adequately train detention officers and medical officers employed at its correctional facility in the use of force positional asphyxia and the provision of medical care to detainees and inmates was deliberately indifferent to and in reckless disregard of the constitutional rights of the persons with whom such jail personnel came into contact with on a regular basis.

91. Defendant Krehbiel's lack of supervision of jail personnel, lack of enforcement of jail policies, and failure to discipline jail employees who violated jail policies and procedures led to an undisciplined and unprofessional staff who believed their actions had no consequences, and the creation of an "anything goes" environment and culture.

92. Defendant Edwards failed to exercise any supervisory control over the actions of the individual defendants who were responsible for restraining and providing medical care to the Plaintiff, and instead stood by and watched and followed the instructions of subordinate personnel.

93. Defendants Luna County's and Krehbiel's failure to train jail personnel proximately caused Defendants Elford, Chavez and McGrael to restrain the Plaintiff in a manner which resulted in the Plaintiff's death.

94.     Defendants Luna County's, Krehbiel's and Edward's failure to supervise jail personnel proximately caused Defendants Elford, Chavez and McGrael to restrain the Plaintiff in a manner which resulted in the Plaintiff's death.

95.     Defendants Luna County's, Krehbiel's, and Edwards' acts and omission proximately caused Plaintiff to suffer injuries for which he is entitled to an award of compensatory damages in an amount to be determined by the finder of fact.

96.     The acts and omissions of these Defendants were reckless and wanton and entitle the Plaintiff to an award of punitive damages in an amount to be determined by the finder of fact.

WHEREFORE, Plaintiff demands that judgment be entered in his favor against Defendants Luna County, Krehbiel and Edwards awarding him compensatory and punitive damages in an amount to be determined at trial, attorney's fees pursuant to 42 U.S.C. §1988, costs incurred in having to bring this action, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

SANDERS & WESTBROOK, PC

/Duff Westbrook
Duff Westbrook
102 Granite Ave. NW
Albuquerque, NM 87102
(505) 243-2243
d.sanderswestbrook@qwestoffice.net

and

Nathan Gonzales
Gonzales Law Firm
925 North Hudson Street
Silver City, NM 88061

(575)388-8015
nathan@gonzaleslaw.us

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 31st day of October, 2012, I filed the foregoing electronically through the CM/ECF system which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/*Duff Westbrook*
Duff Westbrook