IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

    Plaintiff,

v.                                          Civ. 11-676 RB/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, et al.

    Defendants.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

COME NOW Defendants Board of Commissioners of Luna County (the "Defendant County"), John Krehbiel, Josh Elford, John Robert McGrael, and Yolanda Edwards ("the County Defendants"),[1] by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and hereby move this Honorable Court for summary judgment on Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 56, because there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

Wherefore, the County Defendants pray that this Honorable Court enter summary judgment in their favor on all Counts of Plaintiff's Second Amended Complaint.

Counsel for the Plaintiff opposes this motion. Further grounds in support of this Motion are set forth in the Memorandum below.

---

[1] Jonathon Chavez was never served, and thus should be dismissed pursuant to Fed.R.Civ.P. 4(m).

**INTRODUCTION**

This case is essentially a wrongful death action by the representative of a man who was taken into custody high on meth on March 3, 2011, who indisputably became highly combative and was tased in order to bring him under control; he was breathing, but unresponsive and then confused, so an ambulance was called. The EMT report evidences that he did not stop breathing until he was placed in the ambulance, at which point CPR was administered, but he unfortunately died two weeks later in the hospital. Based on this course of events, Plaintiff's Second Amended Complaint[2] ("SAC") has six Counts: 1) a claim of negligence under the New Mexico Tort Claims Act against all Defendants; 2) a Section 1983 excessive force claim against Detention Officer Elford and Medical Officer McGrael; 3) a Section 1983 claim of deliberate indifference to serious medical needs against Medical Officer McGrael; 4) a Section 1983 substantive due process claim against both Defendants Elford and McGrael; 5) a state claim of battery, under the New Mexico Tort Claims Act, against Defendants Elford and Chavez; and 6) a Section 1983 claim of supervisory liability and failure to train against Warden Krehbiel and Sergeant Edwards.

Defendants submit that there is no genuine issue of material fact as to what occurred during that incident because there was a video from a surveillance camera in the booking area of the Detention Center that shows the events in question. It demonstrates that once the inmate exploded out of his cell, he crossed the entirety of the room, and was ultimately subdued in the farthest corner, directly under the camera. Thus, while the video does not demonstrate precisely what occurred once he was on the floor, there are important indicators, such as the lack of urgency by emergency

---

[2] The Plaintiff's original complaint contained claims against former Luna County Manager John Sutherland. The Plaintiff has omitted Mr. Sutherland from their Second Amended Complaint. Therefore, the Plaintiff has abandoned their claims against this Defendant.

personnel during their interaction with Plaintiff that demonstrate that the Plaintiff was not in any medical distress during his contact with the Defendants. Accordingly, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

For purposes of this Motion, Defendants agree that the following facts are undisputed:

1. On March 3, 2011, Christopher Aparicio was high on methamphetamine when he began hallucinating and he called 911 because he thought someone was trying to kill him. *See Incident Report*, attached hereto as Exhibit A.

2. As a result of his drug abuse, it was determined that Christopher Aparicio was in violation of his probation/parole. *See Arrest Record*, attached hereto as Exhibit B.

3. Before he was taken to the Luna County Detention Center (hereafter "LCDC"), Christopher Aparicio he was first taken to the hospital where they cleared him to be incarcerated, which he was at approximately 11:19 p.m. (SAC¶¶ 1, 19-21)

4. During the booking process, Christopher Aparicio became agitated and uncooperative. *See video*, at 11:55, this exhibit will be attached through a Notice of Lodging as Exhibit C. However, an index to this Exhibit is attached hereto. Booking officers present called for back up, and Officers Elford and Chavez arrived. When it appeared he would cooperate, they allowed him out of the cage, but then he became combative again. *Id.*, at 13:55. At one point, Christopher Aparicio trapped Officer Chavez in the caged area with him. *Id.*, at 14:07. As a result, Officer Chavez used his pepper spray and Officer Elford attempted to tase the Plaintiff. *Id.*, at 14:21. Neither of these courses of action had any effect on the Plaintiff. *Id.*, at 14:38. The

Plaintiff then exploded across the room, shoving officers out of his path and breaking Defendant McGrael's collarbone in the process. *Id*., at 14:57. [3]

5.  The remainder of the encounter takes place in the corner of the booking room, under the camera. *Id*., at 15:04.[4]  However, Defendant McGrael can be seen wearing gloves, standing and squatting by Christopher Aparicio. *Id*., at 19:46, 21:36, 23:46, 29:00, 30:20.

6.  The EMT report establishes that he was breathing when they arrived, and that he did not stop breathing until he was placed in the ambulance, at which point they commenced CPR, which was successful. ***See EMT Report***, attached hereto as Exhibit D.

**STANDARD OF REVIEW**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. ***Celotex v. Catrett***, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248-49 (1986).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. *Id.* at 248. Mere assertions or

---

[3] Officers Quintana, Gallegos, and Renteria have not been sued herein.

[4] There are no allegations or indications that the videotape of the incident was doctored or altered in any way, nor any contention that what it depicts from what actually happened.  In addition, the accounts of the Officers are consistent with each other, with what can be seen on the tape, with the report by the EMT's, indeed with all external evidence—they used the force necessary to subdue him, at which point he was breathing but unresponsive. When he opened his eyes, he said he did not know where he was, so Officer McGrael used an ammonia capsule, and then directed that an ambulance be called, which was promptly done.

4

conjecture as to factual disputes are not enough to survive summary judgment. ***Branson v. Price River Coal Co.,*** 853 F.2d 768, 771-72 (10th Cir. 1988). While courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion, that is "only if there is a 'genuine' dispute as to those facts":

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

***Scott v. Harris****,* 550 U.S. 372, 380 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## I. The Plaintiff's Claims under the New Mexico Tort Claims Act in Counts I and V Fail and Should Be Dismissed With Prejudice.

Count I claims that all of the Defendants herein were negligent, but it is submitted that there are any number of obstacles to such a claim. First, for Plaintiff to state a claim under the New Mexico Tort Claims Act against any state entity or state employee, he must specifically identify a waiver of sovereign immunity for the particular claim: "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41-4-5 through 41-4-12, NMSA (1978)." *NMSA 1978 § 41-4-4(A) (1977)*(emphasis added).

It is apparent that the only waiver of immunity even potentially relevant herein would be that found in *§ 41-4-12,* which specifically provides as follows:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

But it is well established that there is no waiver of immunity when law enforcement officers are merely negligent[5], unless that negligence is the cause of one of the enumerated intentional torts by a third party.

> "This Court has held that a law enforcement officer or agency may be held liable under Section 41-4-12 for negligently causing infliction of one of the predicate torts. But no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section." *Bober v. New Mexico State Fair,* 111 N.M. 644, 653-54, 808 P.2d 614, 623-24 (1991) (citations omitted); *see also Blea,* 117 N.M. at 219-20, 870 P.2d at 757-58 (applying *Bober* ); *cf. Lucero v. Salazar,* 117 N.M. 803, 806, 877 P.2d 1106, 1109 (Ct.App.) (construing Tort Claims Act as "evincing a legislative intent not to waive immunity for injuries to indirect or incidental victims of tortious acts committed by government employees"), *cert. denied,* 117 N.M. 802, 877 P.2d 1105 (1994).

**Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dept.***,* 121 N.M. 646, 653, 916 P.2d 1313, 1320 (N.M.,1996).[6] Of course, that is not what occurred herein. Nor has Plaintiff identified what duty was owed to Plaintiff that was negligently breached herein, proximately causing his injury—essentially, the allegations simply reiterate the alleged constitutional violations. (SAC ¶ 54-55)

Accordingly, the only possible applicable waiver of immunity would only potentially allow for Plaintiff's battery claim against Defendants Elford and Chavez (see n. 1, supra) in Count V. [7]

---

[5] It is not like negligence is a lesser included offense of an intentional act; as a federal district court recently had occasion to observe, "there is no such thing as unintentional or negligent retaliation." ***Greenlee v. Southwest Health Systems, Inc.,*** Slip Copy, 2007 WL 2320544 * 12 (D.Colo. 2007).

[6] Of course, the amount of compensatory damages are limited under the TCA, and neither punitive damages nor attorneys' fees nor pre-judgment interest is obtainable. *See N. M. S. A. 1978, § 41-4-19.*

[7] To the extent that the allegations would appear to constitute a claim of negligent supervision, that is not actionable either. **See, e.g., Lessen v. City of Albuquerque***,* 144 N.M. 314, 319 {27}, 187 P.3d 179, 184 (N.M.App. 2008), ***cert. denied*** 144 N.M. 331, 187 P.3d 677 ("In other words, Plaintiff alleges that MDC employees negligently supervised Decedent. But 'the TCA does not specify a tort waiver for negligent supervision.' ***Upton****,* 2006-NMSC-040, ¶ 16.")

But the undisputed facts in this record establish that a battery claim cannot be sustained herein. As Judge James O. Browning of this District has explained:

> "Police officers are not liable for battery if they acted in good faith and did not use more force than reasonably necessary to preserve the peace or effect an arrest." ***Realivasquez v. City of Albuquerque,*** No. CIV 03–0015 MCA/KBM, Memorandum Opinion and Order at 9 (citing **State v. Gonzales**, 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct.App.1982)). **See Alaniz v. Funk**, 69 N.M. 164, 168, 364 P.2d 1033, 1035–36 (1961) (applying, in force case brought against a police officer, an objective reasonableness test that is similar to the test in **Graham v. Connor**, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); **Mead v. O'Connor**, 66 N.M. 170, 173, 344 P.2d 478, 481 (1959) (applying, in battery case brought against a police officer, an objective reasonableness test that is similar to the test found in **Graham v. Connor, supra**).

***Jonas v. Board of Comm'rs of Luna County***, 699 F.Supp.2d 1284, 1297 (D.N.M. 2010). That the undisputed actions by Defendants herein pass the Fourth Amendment objective reasonable test applied to excessive force cases is established below. Based on the foregoing, the Plaintiff's claims brought under the New Mexico Tort Claims Act fail and must be dismissed.

**II.  The Plaintiff's Claims Brought under 42 U.S.C. § 1983 Fail.**

Counts II, III, IV and VI of the Plaintiff's SAC consist of an excessive force claim against Defendants Elford, Chavez and McGrael, a claim of deliberate indifference to serious medical needs claim against Defendant McGrael, a substantive due process claim against Defendants Elford and Chavez and a claim for an alleged failure to train and supervise under 42 U.S.C. § 1983 against Defendants Krehbiel and Edwards (see n. 1, supra).

A.      **Plaintiff's Claims Of Excessive Force Are Without Merit.**[8]

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Of course, the same is true of the need to control inmates. As the Tenth Circuit has explained: "We treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir.2008). A plaintiff can prove a constitutional violation by demonstrating that the amount of force used was objectively unreasonable. *Id.*

In *Hagans v. Franklin County Sheriff's Office*, 695 F.3rd 505 (6th Cir. August 2012). The Sixth Circuit has decided a case with facts that are almost identical to the present case. The facts in *Hagans* are as follows:

> Patrick Hagans spent the early morning hours of May 13, 2007, smoking crack cocaine with his girlfriend. Around 5:30 a.m., Hagans became paranoid and locked himself in the bathroom, telling his girlfriend that "people were after him." R. at 32. Hagans broke the bathroom window, climbed outside and began running around his yard screaming. The commotion woke up Hagans' next door neighbor, Robert Bogard, who saw Hagans kicking chairs around his deck and jumping on top of cars in his driveway. Having "never seen another human in such a rage in [his] entire life," Bogard called the police around 5:35 a.m. *Id*. at 2. The dispatcher informed officers in the area that there was an "unknown disturbance" at Hagans' address.
>
> Officer Nelson Frantz arrived first, around 5:42 a.m., and a shirtless Hagans came running toward him. Frantz ordered Hagans to stop, but Hagans bolted for the backyard, and Frantz gave chase. Frantz shot pepper spray at Hagans, but it hit

---

[8] It must be noted that the video does not depict that Defendant McGrael engaged in any use of force with regard to the Plaintiff. Instead, Defendant McGrael was the medical officer present at the time of the incident. The video depicts the fact that Defendant McGrael was injured by the Plaintiff's erratic and violent behavior and he can be seen wearing gloves and rubbing his collar area. It was later determined that his collar bone was broken.

8

> Hagans' backside, to no effect. Hagans raced back to the front of the house, where he encountered Officer Troy Hughes, who had just arrived. Hagans ran to Hughes' cruiser and began yanking on the locked driver's side door handle. Hagans did not obey Hughes' command to stop, prompting Hughes to grab him by the waist and wrestle him to the pavement. Officer Frantz soon joined the scuffle and tried to subdue Hagans as well. Hagans refused to be handcuffed. He lay down on the pavement and locked his arms tightly under his body, kicking his feet and continuing to scream.
>
> While Officers Hughes and Frantz continued to struggle with Hagans on the ground, a third officer, Jason Ratcliff, approached. Seeing that Hagans was still actively resisting, Ratcliff unholstered his taser and applied it in drive-stun mode, pressing the taser directly against Hagans' upper back. The shock apparently did not faze Hagans, as he reached back and tried to grab the taser. Ratcliff tased Hagans a second time, again to no effect and again prompting Hagans to grab for the device. At this point, Ratcliff tried to use the taser in dart mode, firing two electric probes at Hagans from a distance, but the probes missed (how, from such a short distance, is not clear). Ratcliff tased Hagans two to four more times in drive-stun mode. Realizing that the shocks were not working, Ratcliff joined the other two officers in trying to subdue Hagans by hand. After struggling for twenty or thirty seconds, the three officers finally secured Hagans' wrists with handcuffs and put shackles on his legs to keep him from kicking or running.
>
> A medical squad arrived. Alert at the time, Hagans lost consciousness and stopped breathing about ten minutes later. Paramedics administered CPR in the ambulance on the way to the hospital, restoring Hagans' pulse and respiration. Yet Hagans never regained consciousness, and he died three days later. The coroner found cocaine in Hagans' system and listed his cause of death as "bronchopneumonia due to anoxic encephalopathy due to cocaine intoxication," R. 51-7 at 6--which is to say, the cocaine starved his brain of oxygen, leading to fatal respiratory complications. The coroner's report also listed "[c]oronary atherosclerosis"--hardening of the arteries in the heart--as "a contributing factor." *Id*.

***Hagans***, 695 F.3d at 508. The Sixth Circuit in ***Hagans***, determined that the individually named Defendants were entitled to qualified immunity[9] and further stated that the use of the taser and the force deployed by the defendants in ***Hagans*** did not amount to an excessive use of force. The Sixth Circuit stated:

---

[9] A discussion of qualified immunity and its application to the individually named Defendants will be discussed more fully below.

> That the taser shocks might have contributed to Hagans' death does not change things. Although the autopsy report concluded that Hagans died from cocaine intoxication, Hagans' expert opined that the taser shocks were "a substantial factor in causing his death." R. 52-5 at 3. Even if we credit Hagans' causation evidence, as we must on summary judgment, that does not override his standard-of-care problem. "In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010) (citation and internal quotation marks omitted). For the reasons just given, Officer Ratcliff did not violate clearly established law when he tried—unsuccessfully, it turns out—to subdue Hagans with the taser. Tragic though Hagans' death assuredly is, that regrettable fact cannot transform the state of the law in May 2007, and it cannot alter our duty to grant qualified immunity when an officer has not violated clearly established law.

*Hagans*, 695 F.3d at 508. A review of the videotape in this matter reveals that the Plaintiff was actively resisting all efforts to restrain him in this matter. Based on the authority and finding in *Hagans*, Defendants Elford and McGrael did not engage in any excessive use of force in this matter. Therefore, the Plaintiff's claims in this regard must be dismissed with prejudice.

**B.    Plaintiff's Claim of Deliberate Indifference to Serious Medical Needs Against Defendant McGrael Fails.**

An official violates the Eighth Amendment when two elements are met: (I) the official causes an injury that, objectively, is "sufficiently serious," *i.e.,* an injury that equates to the "denial of the minimal civilized measure of life's necessities"; and (ii) the official has a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). The second condition represents the functional application of the deliberate indifference standard. *Coffey v. U.S.*, Slip Copy, 2011 WL 6013611 *13 (D.N.M.,2011).

A claim for inadequate medical attention will be successful if the plaintiff shows " 'deliberate indifference to serious medical needs.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (*quoting Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir.1994) (*quoting Estelle v. Gamble*,

10

429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))).  This is a difficult standard to meet, as deliberate indifference requires a higher degree of fault than negligence, or even gross negligence. ***Barrie v. Grand County, Utah***, 119 F.3d 862, 869 (10th Cir.1997); *see also Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Based on the facts in this case, there is no basis for establishing these factors against Defendant McGrael.  The video demonstrates that Defendant McGrael was present and attending to Christopher Aparicio at all times material hereto. ***See video***, attached hereto as Exhibit C, at 19:46, 21:36, 23:46, 29:00, 30:20.  Further, the video demonstrates that a phone call was made, and 12 to 15 minutes later EMS arrives to treat the Plaintiff and transport him to the hospital. ***See video***, attached hereto as Exhibit C, at 35:00;  ***and see EMS Report***, attached hereto as Exhibit D  (which indicates that it took approximately 12 minutes for EMS to arrive at LCDC after they were dispatched). Consequently, Defendant McGrael was not deliberately indifferent to Plaintiff's medical needs, instead he had EMS called and continued to monitor the Plaintiff's vital signs at all times material hereto.  ***See Deposition of McGrael***, at pp.'s 72-75, attached hereto as Exhibit E.  As such, the Plaintiff's claim of denial of medical care is without merit and must be dismissed.

**C. The Plaintiff's Claim For Substantive Due Process Fails.**

The SAC contains another Count which attempts to state a substantive due process claim under the Fourteenth Amendment, but Defendants submit that this attempt is wholly inadequate. First, here, as in ***Shrum v. City of Coweta, Okla***., 449 F.3d 1132, 1145 (10th Cir. 2006), the "substantive due process claim restates [the]… other constitutional claims at a higher level of abstraction.  Where a plaintiff has  recourse to an 'explicit textual source of constitutional

protection,' *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), a more general claim of substantive due process is not available." The claims in Counts II and III are the more explicit textual source in this instance, and thus should preclude this substantive due process claim.

Second, the standard for stating such a claim requires that the conduct alleged shock the conscience of the Court, and whether the conduct "shocked the conscience" is a question for the court, not the jury. **See, City of Monterey v. Del Monte Dunes at Monterey, Ltd.**, 526 U.S. 687, 753, 143 L. Ed. 2d 882, 119 S. Ct. 1624 (1999). While Plaintiff has conclusorily alleged that the Defendants' conduct would shock the conscience. However, a review of the video in this incident reveals that the conduct of the Defendants was reasonable and appropriate under the circumstances. Therefore, the Plaintiff's claim of an alleged substantive due process violation fails and must be dismissed with prejudice.

### D. The Plaintiff's Claim of Inadequate Supervision of 42 U.S.C. § 1983 Fails.

The United States Supreme Court reemphasized in *Ashcroft v. Iqbal*, 556 U.S. 662,129 S. Ct. 1937, 1948, 173 L.Ed.2d 868 (U.S. 2009), that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. It is by no means clear that a claim for supervisory liability still exists after *Iqbal, supra*. **See Dodds v. Richardson**, 614 F.3d 1185, 1198 (10th Cir. 2010), *cert. denied,* ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2150, 179 L.Ed.2d 935 (2011). Assuming such a cause of action survives:

> to demonstrate that a supervisor-defendant has violated the plaintiff's constitutional right in failing to train—in order to establish individual liability under § 1983—a plaintiff must show: 1) an *underlying violation* of his constitution rights; 2) that the supervisor-defendant's personal involvement *caused* the misconduct complained of; and 3) that the supervisor-defendant acted with the state of mind or *intent* required to

establish he committed a constitutional violation; specifically, at minimum, establish a deliberate and intentional act on the part of the defendant to violate the plaintiff's legal rights. ***Dodds v. Richardson, supra; Myers v. Koopman, supra***.

***Kemp v. Lawyer***, 846 F.Supp.2d 1170, 1175 (D.Colo., 2012).

Plaintiff cannot meet this standard as to either the Warden, Mr. Krehbiel, nor as to Sergeant Edwards. **See *Mitchell v. Maynard*,** 80 F.3d 1433, 1441 (10th Cir. 1996) ("[P]ersonal participation is an essential allegation to a Section 1983 claim.")

Similarly, to establish the liability of the County, Plaintiff must show that the institution's policies caused the constitutional violation. ***McMillian v. Monroe County, Ala.,*** 520 U.S. 781,117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997). Thus, Plaintiff would have to show (I) that a constitutional violation occurred; and (ii) that a County policy was the moving force behind the violation. **See *Myers v. Oklahoma County Board of County Commissioners,*** 151 F.3d 1313,1320 (10th Cir. 1998). Even if one were to assume that Plaintiff could establish a constitutional violation herein, it obviously was not the result of a policy. ***And, see Kelley v. City of Albuquerque, et al.,*** 375 F. Supp.2d 1183 (D.N.M. 2004).

> With respect to the claim against the County, the primary deficiency is a legal one. As the district court correctly noted, a local government may be held liable for its employees' constitutional violations only when those employees are "execut[ing the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." ***Monell v. Dep't of Soc. Servs.,*** 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We have no evidence before us suggesting that the conduct … alleged represented the execution of an official policy rather than gross deviations from such policy.

***Lujan ex rel. Lujan v. County of Bernalillo***, 354 Fed.Appx. 322, 326 (10th Cir. 2009).

In the present case, the Plaintiff has no evidence that Christopher Aparicio's rights were violated in this matter or that either Defendant Krehbiel or Defendant Edwards were aware of

inadequate training or supervision prior to the date of this incident and were deliberately indifferent to the clear need for additional training or supervision. Consequently, the Plaintiff's claims against Defendants Krehbiel and Edwards in this regard fail and must be dismissed.

### E. The Individually Named Defendants Are Entitled to Qualified Immunity.

"[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald**, 457 U.S. 808, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is designed to prevent the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." **Harlow, supra**, 457 U.S., at 816, 102 S.Ct., at 2737. Specifically, the policy underpinnings of this doctrine involve "strik[ing] a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" **Locurto v. Safir**, 264 F.3d 154, 162-63 (2d Cir.2001) (quoting **Kaminsky v. Rosenblum**, 929 F.2d 922, 924-25 (2d Cir.1991)). The doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated. **Butz v. Economou**, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The presumption in favor of finding qualified immunity is necessarily high, protecting "all but the plainly incompetent or those who knowingly violate the law." **Malley v. Briggs**, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Where "officers of reasonable competence could

disagree on th[e] issue, immunity should be recognized." *Id.* Simply stated, qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Where qualified immunity is raised as a defense to a claim under Section 1983, it is plaintiff's burden to point to particular facts that overcome same. *See Mitchell v. Forysthe, supra,* 472 U.S. at 526. Plaintiff's burden has been described by the Tenth Circuit as a "heavy two-part burden," entailing first a showing that defendant's actions violated a constitutional right, and second, that those rights were clearly established at the time of the conduct at issue. *Albright v. Rodriquez,* 51 F.3d 1531, 1534 (10th Cir. 1995).

The Tenth Circuit has held that:

> [P]laintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

*Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir. 1990) *(quoting Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir.2002).

The United States Supreme Court has held that the qualified immunity analysis can proceed in either way this Court sees fit to do so—in other words, this Court now has the flexibility to decide whether something had been clearly established before determining whether there is a constitutional violation in the first instance:

> On reconsidering the procedure required in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)] we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson, et al. v. Callahan*, 555 U.S. 223, 129 S.Ct. 818, 172 L.Ed.2d 565, 2009 WL 128768 *9 **(**2009). Of course, a right is not clearly established unless and until "there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority from other courts shows that the right must be as Plaintiffs maintain." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). As set forth above, the Sixth Circuit has held, in a case involving facts almost identical to the case at bar, that there is no clearly established law which has held that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force. *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. Ohio 2012). "The essence of qualified immunity, however, is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways. *See al-Kidd*, 131 S. Ct. at 2085. The fact remains that, prior to May 2007 (and for several years after), no case in any circuit held that officers used excessive force by tasing suspects who were actively resisting arrest, even though many of them, like Hagans, were suspected of innocuous crimes, posed little risk of escape and had not yet physically harmed anybody." *Hagans*, 695 F.3d at 511.[10] In the present case, the

---

[10] In *Hagans*, the Sixth Circuit also held that because Ratcliff did not violate a clearly established right, it follows that his employer, the Franklin County Sheriff's Office, is also entitled to summary judgment. "'To hold the Sheriff's Office liable, Hagans must show that its 'failure to train' officers on the proper use of tasers 'amounts to deliberate indifference.' *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). But 'a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.' *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc)."

Christopher Aparicio can be seen actively resisting all efforts to subdue him. The actions of the Defendants were reasonable efforts to gain control of Mr. Aparicio. The video does not reveal anyone engaged in any gratuitous violence with regard to Mr. Aparicio. Consequently, the individually named Defendants are entitled to qualified immunity.

## CONCLUSION

For all of the foregoing reasons, the County Defendants submit that summary judgment should be entered in their favor, and against Plaintiff, on all Counts of Plaintiff's Second Amended Complaint.

Respectfully submitted:

LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: ***Electronically filed December 14, 2012***
      JONLYN M. MARTINEZ
      Attorney for County Defendants
      P. O. Box 1805
      Albuquerque, NM  87103-1805
      (505) 247-9488 Telephone
      jonlyn@jmartinezlaw.net

I hereby certify that a copy of the
foregoing was served on all counsel
of record via CM/ECF on December 14, 2012:

      /s/

WE HEREBY CERTIFY THAT a true and correct copy of the foregoing was served on all counsel of record on this ___ day of December, 2012, via CM/ECF.

Duff Westbrook
102 Granite Avenue, NW
Albuquerque, NM  87102
d.sanderswestbrook@qwestoffice.net

R. Nathan Gonzales
Attorney at Law
925 N. Hudson Street
Silver City, New Mexico  88061
nathan@gonzaleslaw.nm

/s/_____
   JONLYN M. MARTINEZ

Of course, it is well established that punitive damages cannot be had against governmental entities. ***City of Newport v. Fact Concerts, Inc.,*** 453 U.S. 247, 263-64, 271,101 S.Ct. 2748 (1981).