IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

      Plaintiff,

vs.                                  No. CIV 11-0676 KG/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, JOHN KREHBIEL,
JOSH ELFORD, JONATHAN CHAVEZ,
JOHN ROBERT MCGRAEL, and
YOLANDA EDWARDS,

      Defendants.

MEMORANDUM OPINION AND ORDER

On October 31, 2013, Defendant Jonathan Chavez filed a Motion for Summary Judgment

and for Qualified Immunity on the Section 1983 Claims in Plaintiff's Second Amended

Complaint. (Doc. 221). On November 25, 2013, Plaintiff filed a Response in Opposition to the

Motion for Summary Judgment and for Qualified Immunity. (Doc. 226). On December 11, 2013,

Defendant Chavez filed a reply. (Doc. 233). For the following reasons, Defendant Chavez's

Motion for Summary Judgment and Qualified Immunity is denied.

*I. Background*

    *A.  Plaintiff's Second Amended Complaint (Doc. 133)*

Christopher Aparicio sustained serious injuries during an altercation with detention

officers while he was in the custody of the Luna County Detention Center (LCDC) in Deming,

New Mexico, and died as a result. Plaintiff brings this action for monetary damages as personal

representative of Mr. Aparicio. Defendants are: Board of County Commissioners of Luna

County, owners and operators of LCDC; Josh Elford, LCDC detention officer; Jonathan Chavez, LCDC detention officer; John Robert McGrael, medical officer at LCDC; Yolanda Edwards, LCDC sergeant; and John Krehbiel, warden of LCDC.

Plaintiff's Second Amended Complaint contains six Counts: Count I, a negligence and wrongful death claim under the New Mexico Tort Claims Act[1] against all Defendants; Count II, a 42 U.S.C. § 1983 excessive force claim against Defendants Elford, Chavez, and McGrael; Count III, a Section 1983 claim of deliberate indifference to serious medical needs against Defendant McGrael; Count IV, a Section 1983 substantive due process claim against Defendants Elford, Chavez, and McGrael; Count V, a state claim of battery, under the New Mexico Tort Claims Act, against Defendants Elford, Chavez, and McGrael; and Count VI, a Section 1983 claim of failure to train and supervise against the Board of County Commissioners of Luna County, and Defendants Krehbiel and Edwards.

*B. Defendant Chavez's Motion for Summary Judgment*

Defendant Chavez moves for summary judgment on Counts II and IV of Plaintiff's Second Amended Complaint and asserts qualified immunity. Defendant Chavez makes four primary arguments, arguing that (1) Mr. Aparicio was a convicted prisoner at the time of the altercation at LCDC, and therefore the Eighth Amendment standard applies to Counts II and IV of Plaintiff's Second Amended Complaint; (2) Defendant Chavez is entitled to summary judgment on the excessive force claim in Count II because his actions did not violate Defendant Chavez's Eighth Amendment rights; (3) Defendant Chavez is entitled to summary judgment on the substantive due process claim in Count IV because the Eighth Amendment provides a more explicit source of constitutional protection, precluding recovery under the Fourteenth

---

[1] NMSA 1978, §§ 41-2- through 41-2-4.

Amendment's substantive due process clause; and (4) Defendant Chavez is protected from

liability of the allegations in Counts II and IV because he is entitled to qualified immunity.

    *C. Summary of Material Facts[2]*

    On March 3, 2011, at about 8:00 p.m., Deming police were dispatched in response to a

911 hang up call. (Doc. 221-1) at 10. Police officers found Christopher Aparicio in a nervous and

paranoid state. *Id.* Mr. Aparicio informed the police that he was on probation and gave the name

of his probation officer. *Id.* On the way to the police department, Mr. Aparicio admitted he had

used methamphetamine at roughly 10:00 a.m. that morning. *Id.* The police officers contacted Mr.

Aparicio's probation officer who informed them that the use of methamphetamine constituted a

probation violation. *Id.* An arrest order was faxed to the police department. (Doc. 221-1) at 12.

The police officers arrested Mr. Aparicio for violating the conditions of his probation. (Doc. 221-

1) at 10.

    Next, the police officers transported Mr. Aparicio to Mimbres Memorial Hospital for a

pre-incarceration medical examination. *Id.* At the hospital, Mr. Aparicio was cooperative and

informed medical personnel that he had ingested methamphetamine earlier in the day. (Doc. 166-

1) at 2. Dr. Hassan Adnan examined Mr. Aparicio and found a strong pulse, normal respiration,

and no bruises or injuries. *Id.* at 3. The neurological examination was normal. *Id.* Dr. Adnan

medically cleared Mr. Aparicio for detention. *Id.* at 5. The police officers then transported Mr.

Aparicio to LCDC. (Doc. 221-1) at 10.

    Defendant McGrael, the medical officer on duty at LCDC, conducted the initial intake of

Mr. Aparicio. (Docs. 166-8) at 5. Mr. Aparicio admitted to Defendant McGrael that he had been

using methamphetamine. *Id.* Defendant McGrael informed the supervisor on duty that Mr.

---

[2] Unless otherwise noted, the summary of material facts is undisputed.

Aparicio would need a single cell once the booking process was completed due to methamphetamine intoxication. *Id.* at 5-6.

Mr. Aparicio was placed in a booking cage in the booking area; the booking cage measures approximately three feet by three feet. (Doc. 166-2) at 3. While sitting in the booking cage, Mr. Aparicio became agitated and asked repeatedly why he was in jail. *Id.* at 4. Jessica Quintana, the booking officer, unsuccessfully tried to calm Mr. Aparicio. *Id.* Officer Quintana knew that Mr. Aparicio was high on methamphetamine. *Id.* When Officer Quintana informed Mr. Aparicio that they needed to remove him from the booking cage to take his picture, Mr. Aparicio became more agitated. *Id.* Officer Quintana called for back-up. *Id.* at 5. Several detention officers, including Defendant Chavez and Defendant Elford, arrived and surrounded the booking cage.[3] *Id.* (Video at 12:54-13:00). Defendant Chavez was aware that Mr. Aparicio was under the influence of methamphetamine. (Doc. 227-6).

When it appeared that Mr. Aparicio would cooperate, Defendant Elford opened the door to the booking cage. (Doc. 166-5) at 5.  Once the door was opened, Mr. Aparicio started to "freak out" and shake his arms around as if he were scared. (Doc. 166-7) at 3. Defendant Elford grabbed Mr. Aparicio's wrist and put his other hand behind Mr. Aparicio's elbow. (Doc. 166-5) at 6. Mr. Aparicio became combative, and Defendant Chavez tried to handcuff him. *Id.*; (Doc. 166-2) at 5. Mr. Aparicio grabbed Defendant Chavez, pinning him against the inside of the booking cage. (Doc. 166-5) at 7; (Doc. 166-2) at 5; (Video at 14:07). Defendant Elford pulled Defendant Chavez out of the booking cage while the detention officers unsuccessfully tried to close the door. *Id.* (Video at 14:38). When Mr. Aparicio was in the doorway of the booking cage, he started screaming and pointing at the detention officers. (Doc. 166-5) at 8. Defendant Elford

---

[3] The following description of events comes from a video surveillance tape located in the booking area. *See* (Doc. 152-3).

drew his Taser and ordered Mr. Aparicio to sit down. *Id.* at 7. Defendant Chavez sprayed him

with pepper spray, and Defendant Elford used his Taser on Mr. Aparicio twice. *Id.*; (Doc. 166-

15). Mr. Aparicio then ran out of the booking cage towards the corner of the booking area. *Id.*

(Video at 14:57). Defendant Elford shot Mr. Aparicio with the Taser for a third time as Mr.

Aparicio ran across the booking area. *Id.* at 9.

As Mr. Aparicio ran across the room, Defendant Chavez attempted to subdue him. (Doc.

116-14). Mr. Aparicio bowled over Defendant Chavez causing Defendant Chavez to hit his back

on the fingerprint machine. (Doc 116-8) (Video at 14:59). Mr. Aparicio continued forward and

fell on top of Defendant Chavez in the corner of the booking area. (Doc. 166-2; Video at 15:02).

Defendant Chavez hurt his back, knee, and hand in the process of trying to subdue Mr. Aparicio.

(Doc. 227-6).

At this point in the incident, Mr. Aparicio was located in the corner of the booking area

that is out of view of the surveillance camera. (Video at 15:04). Mr. Aparicio did not reenter the

view of the camera until paramedics placed him on a stretcher. (Video at 38:00). Plaintiff alleges

that the detention officers, including Defendants Chavez and Elford, assaulted Mr. Aparicio

while he was in that corner of the booking area.

Austin Barshaw and Erin Tindall were being held at LCDC during the altercation and

claim to have witnessed the off-camera events. Austin Barshaw was confined in cell 104 and

states that he was able to see the entire booking area through the food port on the cell's door.[4]

---

[4] The parties present conflicting witnesses regarding whether Mr. Barshaw was able to see the
corner of the booking area where the altercation happened off camera. Defendants' witness, Carl
Sanner, states that "[t]he corner area, where Christopher Aparicio was located, is not visible from
the food port of [cell 104]. Thus, Christopher Aparicio's head, neck and torso would not have
been visible to Mr. Barshaw." (Doc. 221-1) at 1-2. Plaintiff's witness, Ed Apodaca, states that
the corner of the booking area was visible through the food port in cell 104.

(Doc. 227-1). Eric Tindall was confined in the vestibule adjacent to the booking area. (Doc. 166-18). According to Mr. Barshaw, Defendant Elford came up to Mr. Aparicio, who was on top of Defendant Chavez, grabbed Mr. Aparicio by the neck, and slammed him to the floor on his back. (Doc. 166-14) at 5. Mr. Barshaw heard Mr. Aparicio make a wheezing sound as the air was knocked out of him. *Id.* Mr. Barshaw states that at least seven detention officers rolled Mr. Aparicio onto his chest and held him down on the floor. *Id.* at 6. Officer Quintana described the scene as a "dog pile" on Mr. Aparicio. (Doc. 166-17) at 4. Officer Quintana further observed the detention officers handcuff Mr. Aparicio behind his back within two minutes after he hit the floor. *Id.* at 7. Defendant Elford then asked a female officer to retrieve restraints and, within a few minutes, the detention officers put Mr. Aparicio in leg restraints. *Id.*

Within three minutes of taking down Mr. Aparicio, three of the detention officers moved back into view of the video camera, leaving at least four officers, including Defendants Chavez and Elford, off camera with Mr. Aparicio. (Video at 18:07). According to Mr. Barshaw and Mr. Tindall, at that point Mr. Aparicio was lying chest down on the floor. *Id.* Mr. Bradshaw states that Defendant Chavez was holding Mr. Aparicio's torso down, and Defendant Elford jammed his knee into Mr. Aparicio's neck. (Doc. 166-2) at 6; (Doc. 227-1). Mr. Tindall observed another detention officer holding Mr. Aparicio's feet and pushing his legs forward while two other detention officers held his arms down. (Docs. 166-18; 227-4). According to Mr. Bradshaw, Mr. Aparicio lost consciousness, and detention officers continued to restrain Mr. Aparicio in a prone position. (Doc. 166-14) at 7; (Doc. 166-2) at 13. Officer Quintana and Mr. Elford describe that Defendants Elford, Chavez, and McGrael made no effort to sit Mr. Aparicio up or turn him on his side. (Doc. 166-5) at 13; (Doc. 116-2) at 13. Officer Quintana observed that when Officer Matthew Renteria briefly turned Mr. Aparicio on his side, Defendant McGrael told him to turn

6

Mr. Aparicio back on his stomach. (Docs. 166-8) at 8; (166-2) at 7. Officer Renteria states that

when he turned Mr. Aparicio onto his side, Mr. Aparicio's eyes were rolled back. (Doc. 166-17)

at 3. Defendant McGrael then asked Defendant Edwards, the supervisor, to call an ambulance.

(Doc. 166-7) at 4.

Thirty minutes after this incident, emergency medical technicians arrived  and took Mr.

Aparicio out on a stretcher. (Video at 25:00-40:42). Emergency medical personnel transported

Mr. Aparicio to Mimbres Memorial Hospital. (Doc. 166-3) at 2-3. When Mr. Aparicio arrived

back at the hospital, less than an hour after he had been medically cleared for detention, he had

experienced a collapsed lung, brain anoxia, and cardio-pulmonary arrest. *Id.* Mr. Aparicio was

transported to Mountain View Regional Medical Center in Las Cruces, New Mexico, where he

died two weeks later. *Id.* The Office of Medical Investigators report states: "Mr. Aparicio's

cardiac arrest occurred during/following restraint/a struggle, but since the exact role of the

interaction in the death is unclear the manner of death is undetermined." *Id.* Plaintiff's expert

witness, Werner U. Spitz, M.D., opined that the detention officers' use of the Taser and

positional restraint caused Mr. Aparicio's death. (Doc. 227-5) at 5. Defendants' expert witness,

Gary M. Vilke, M.D., opined that Mr. Aparicio died from cardiac arrest caused by

methamphetamine induced excited delirium syndrome. (Doc. 175-8).

*II. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[5] When

applying this standard, the Court examines the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics*

---

[5]  Rule 56 was amended effective December 1, 2010, but the standard for granting summary
judgment remains unchanged.

*Intl, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving

party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to

come forward with evidence showing that there is a genuine issue of material fact. *Bacchus*

*Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is

genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d

1208, 1212 (10th Cir.1996) (citation omitted). The non- moving party may not avoid summary

judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus.,*

*Inc.*, 939 F.2d at 891.

III. Discussion

      *A.  Mr. Aparicio was in pre-trial detention at the time of the altercation*

      Defendant Chavez alleges that Mr. Aparicio should be considered a convicted prisoner at

the time of the incident at LCDC because he was in custody as a result being charged with

violating his probation. As such, Defendant Chavez contends that the Court should evaluate

Plaintiff's claims in Counts II and IV under the Eighth Amendment's cruel and unusual

punishment clause rather than under the Fourteenth Amendment's due process clause. The Tenth

Circuit Court of Appeals has held that if a plaintiff is detained before an adjudication of guilt,

then the Eighth Amendment does not apply, and the Court "turn[s] to the due process clauses of

the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by

federal or state authorities."[6] *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010). This issue

has already been ruled on in this case, and the Court held that Mr. Aparicio was a pre-trial

detainee while he was being held at LCDC. *See* (Doc. 196) at 12;  *United States v. LaHue*, 261

---

[6] In contrast, the Eighth Amendment standard applies to incarcerated persons whose guilt has
been formally adjudicated. *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990).

F.3d 993, 1010–11 (10th Cir. 2001) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Because Mr. Aparicio was in pretrial detention, the due process standard of the Fourteenth Amendment applies to Counts II and IV of Plaintiff's Second Amended Complaint.

   B.  *Defendant Chavez is not entitled to summary judgment on the excessive force claim*

   In Count II, Plaintiff alleges that Defendant Chavez used excessive force against Mr. Aparicio while he was being held at LCDC. Defendant Chavez moves for summary judgment on this claim and cites to the Eighth Amendment's cruel and unusual punishment clause. Plaintiff however, argues that the Fourteenth Amendment standard applies to the excessive force claim. As discussed above, Mr. Aparicio was in pre-trial detention, and the Fourteenth Amendment due process standard applies. When determining whether force was excessive within the meaning of the due process standard of the Fourteenth Amendment, the Tenth Circuit focuses on three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003).

   Viewed in the light most favorable to Plaintiff, the evidence shows that Mr. Aparicio entered LCDC with a strong pulse, normal respiration, and no bruises or injuries. Defendant Chavez knew that Mr. Aparicio was under the influence of methamphetamine. After Defendant Elford opened the door to the booking cage, Mr. Aparicio pinned Defendant Chavez against the side of the cage. Defendant Chavez escaped from being pinned and sprayed Mr. Aparicio with pepper spray. Mr. Aparicio then ran from the booking cage, knocking Defendant Chavez into the fingerprint machine. Mr. Aparicio continued forward and fell on top of Defendant Chavez. As a

result, Defendant Chavez hurt his back, knee, and hand. Next, Defendant Elford slammed Mr.

Aparicio to the floor, and Defendant Chavez and six other detention officers piled on top of him.

Defendant Chavez held down Mr. Aparicio as Defendant Elford jammed his knee in Mr.

Aparicio's neck. Finally, Defendant Chavez and other detention officers restrained Mr. Aparicio

in a prone position on his chest until Mr. Aparicio became unresponsive as a result of the actions

of the detention officers. After Mr. Aparicio became unresponsive, Defendant Chavez made no

attempt to sit up Mr. Aparicio or turn him on his side. As a result, the detention officers severely

injured Mr. Aparicio, and he eventually died.

A reasonable jury could conclude from the above described facts that the amount of force

used by Defendant Chavez exceeded the need presented. As a result, Mr. Aparicio died.

Moreover, a jury could reasonably decide that Defendant Chavez was motivated by a desire to

retaliate against Mr. Aparicio for injuring him and for fighting with the detention officers.

Viewed in the light most favorable to Plaintiff, Plaintiff has put forth evidence that raises a

genuine issue of material fact regarding the relationship between the amount of force used and

the need presented, the extent of the injury inflicted, and the motives of Defendant Chavez.

Therefore, Defendant Chavez is not entitled to summary judgment regarding the excessive force

claim in Count II.

   C.  *Defendant Chavez is not entitled to summary judgment on the due process claim*

In Count IV, Plaintiff asserts that the actions of Defendant Chavez violated Mr.

Aparicio's Fourteenth Amendment substantive due process rights. Defendant Chavez moves for

summary judgment on this claim. Defendant Chavez argues that Plaintiff's substantive due

process claim is not available to him because Plaintiff has recourse to an explicit textual source

of constitutional protection. *See Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1145 (10th Cir.

2006) ("Where a plaintiff has recourse to an 'explicit textual source of constitutional protection,' a more general claim of substantive due process is not available."). Defendant Chavez contends that Plaintiff's excessive force claim in Count II arises under the Eighth Amendment and thus is based on a more "explicit textual source" of constitutional protection. Consequently, Defendant Chavez argues that Plaintiff cannot have a more general Fourteenth Amendment due process claim. Defendant Chavez's argument is unpersuasive because, as discussed above, Mr. Aparicio's excessive force claim does not arise under the Eighth Amendment. Rather, Count IV is properly analyzed under the Fourteenth Amendment due process clause.

The due process clause of the Fourteenth Amendment prohibits "executive abuse of power . . . which shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Force inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment." *Roska*, 328 F.3d at 1243. "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006).

Construed in the light most favorable to Plaintiff, the evidence shows that Mr. Aparicio entered LCDC in a relatively healthy condition. Defendant Chavez continued to restrain Mr. Aparicio in a prone position on his chest while the detention officers placed weight and pressure on his neck. Prior to this, Defendant Chavez was aware that Mr. Aparicio was high on methamphetamines. Even after Mr. Aparicio lost consciousness, Defendant Chavez continued to restrain Mr. Aparicio on his chest for several minutes, never attempting to roll him over or sit him up. Additionally, the actions of Defendant Chavez and other correctional officers severely injured Mr. Aparicio and lead to Mr. Aparicio's eventual death. Based on this evidence, a

11

reasonable jury could determine that Defendant Chavez's conduct amounted to an abuse of

power that shocks the conscience. Plaintiff has put forth evidence that raises a genuine issue of

material fact regarding whether Defendant Chavez violated Mr. Aparicio's Fourteenth

Amendment due process rights. Therefore, Defendant Chavez is not entitled to summary

judgment on Count IV.

### D.  Defendant Chavez is not entitled to qualified immunity

Defendant Chavez argues he is entitled to qualified immunity on Counts II and IV

because "there is surely no constitutional violation involved in attempting to process a person

high on drugs in to the detention facility, much less one that is clearly established." (Doc. 221) at

19. Section 1983 provides that "[e]very person" who acts under color of state law to deprive

another of constitutional rights "shall be liable to the party injured in an action at law." 28 U.S.C.

§ 1983. "The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established . . . constitutional rights of

which a reasonable officer would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quotation omitted). A qualified immunity claim imposes the burden on the plaintiff to show (1)

"that a constitutional violation occurred" and, (2) "that the constitutional right was clearly

established at the time of the alleged violation." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir.

2009) (internal quotations omitted). If either of these requirements is not met, the defendant is

entitled to qualified immunity and summary judgment is appropriate. *Id.*

### 1. Constitutional violation

Plaintiff must first establish that Defendant Chavez violated Mr. Aparicio's constitutional

rights. As more fully discussed in the preceding sections, Plaintiff has presented evidence

sufficient to create disputes of material facts as to whether constitutional violations occurred.

12

Taken in the light most favorable to Plaintiff, the facts show that Defendant Chavez's conduct

violated Mr. Aparicio's constitutional rights. Thus, Plaintiff has satisfied the first requirement to

overcome Defendant Chavez's assertion of qualified immunity.

### 2. Clearly established constitutional right

Additionally, Plaintiff must show that the rights were clearly established at the time of

the alleged violation. In order for a right to be clearly established, "[o]rdinarily, ... there must be

a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains." *Post*, 574 F.3d at

1300. "A plaintiff must articulate the clearly established constitutional right and the defendant's

conduct which violated the right with specificity." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d

504, 516 (10th Cir.1998). Although Plaintiff does not need to "find a case with an identical

factual situation, he still must show legal authority which makes it apparent that in the light of

pre-existing law a reasonable official ... would have known that [the conduct in question violated

Mr. Apricio's constitutional rights]." *Post*, 574 F.3d at 1300.

Specifically, with regard to the excessive force claim, Plaintiff has shown that, on

March 3, 2011, it was clearly established that the Fourteenth Amendment barred detention

officers from using excessive force on a pretrial detainee, specifically by placing prolonged

pressure on a person's back while the person is in a prone position. *See Cruz v. City of Laramie,
Wyo.*, 239 F.3d 1183, 1188-89 (10th Cir. 2001) ("[O]fficers may not apply th[e hog-tie]

technique when an individual's diminished capacity is apparent" because of "breathing problems

created by pressure on the back and placement in a prone position, especially when an individual

is in a state of 'excited delirium.'"); *Weigel v. Broad*, 544 F.3d 1143, 1154-55 (10th Cir. 2008)

("[I]t is clearly established that putting substantial or significant pressure on a suspect's back

13

while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." (citation and internal parenthesis omitted)).

With respect to the due process claim, Plaintiff has shown that it was clearly established on the date of the incident that the continued restraint of an unresponsive pretrial detainee shocks the conscience. *Roska*, 328 F.3d at 1243 ("Force inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment."). Therefore, Plaintiff has shown legal authority which makes it apparent that in the light of pre-existing law a reasonable detention officer would have known that Defendant Chavez's conduct violated Mr. Aparicio's constitutional rights.

Plaintiff has shown both that constitutional violations occurred and that the constitutional rights were clearly established at the time of the alleged violation. Defendant Chavez, therefore, is not entitled to qualified immunity.

IT IS ORDERED that Defendant Chavez's Motion for Summary Judgment and for Qualified Immunity on the Section 1983 Claims in Plaintiff's Second Amended Complaint (Doc. 221) is denied.

_____
UNITED STATES DISTRICT JUDGE