IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

    Plaintiff,

v.                                                                       Civ. 11-676 KG/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, et al.

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Strike the Expert Report [of] Dr. Werner U. Spitz and Memorandum in Support Thereof (Motion to Strike), filed February 4, 2014. (Doc. 248). Plaintiff filed a response on February 10, 2014. (Doc. 267). On February 20, 2014, the Court held a hearing on the Motion to Strike. Present at the hearing were Duff Westbrook and Nathan Gonzales, counsel for Plaintiff, and Jonlyn Martinez and Mark Komer, counsel for Defendants. Having considered the Motion to Strike, Plaintiff's response, and the argument of counsel at the February 20, 2014, hearing, the Court concludes that the Motion to Strike is granted in part.

Dr. Spitz is a medical doctor specializing in pathology. Dr. Spitz opines that the use of a taser and positional restraint (positional asphyxia) unnecessarily caused Mr. Aparicio's death. Defendants move to strike the entirety of Dr. Spitz's report as well as any testimony he may offer.

Fed. R. Evid. 702 states that

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Dr. Spitz is qualified to testify about whether positional asphyxiation caused Mr. Aparicio's death. Dr. Spitz, however, is not qualified to testify regarding the effect of a taser on Mr. Aparicio. Dr. Spitz's only reference in his report concerning taser use is to Taser International's warning about "repeated, prolonged and/or continuous exposure" to taser discharges to the chest causing breathing problems. (Doc. 248-1) at 5. *See also Glowczenski v. Taser Intern., Inc.*, 2012 WL 976050 *8 (E.D. N.Y.) (expert had "inadequate understanding or knowledge about tasers and how they work, specifically about the differences between probe deployment and drive stun modes and the differing impacts those modes have on the human body. The principles and methodology on which his proposed testimony is based are not sufficient for him to qualify as an expert in this area, and his general experience as a forensic pathologist does not change that result."). Dr. Spitz is also not qualified to testify regarding any mental impressions Mr. Aparicio may have experienced during his detention at the Luna County Detention Center. On the other hand, Dr. Spitz is qualified to testify about the physical condition of Mr. Aparicio's body at the time of death, but Dr. Spitz cannot testify that Mr. Aparicio's "healthy" lifestyle did not contribute to his death.

      Defendants argue that Dr. Spitz's opinion that positional asphyxiation caused Mr. Aparicio's death is neither relevant nor reliable. Defendants contend first that since it is undisputed that the paramedics reported that Mr. Aparicio was breathing and had a pulse when

they arrived, Aparicio was not asphyxiated.  *See* (Doc. 248-2) at 8 (Dr. Gary Vilke, Defendants' medical expert, states that there is no such thing as "delayed sudden asphyxia deaths.").  Plaintiff notes that right after the paramedics arrived Mr. Aparicio ceased breathing and went into cardiac arrest.  Plaintiff argues that Dr. Spitz can show that these subsequent medical conditions resulted from lack of oxygen caused by Mr. Aparicio being in a prone position for a prolonged period of time.  Considering Dr. Spitz's knowledge of positional asphyxiation, Dr. Spitz's testimony on the effects of lack of oxygen due to being in a prone position for a prolonged period of time is relevant to the causation of Mr. Aparicio's death.  As discussed below, that testimony is reliable as well.

     Defendants assert that Dr. Spitz's statement that "face down position is at all times a risky method of restraint, especially in individuals in a state of excitement and agitation who need more oxygen" is not reliable because it is based on a faulty 1988 study by Dr. Donald Reay. (Doc. 248-1) at 4 and 7.  Defendants' medical expert, Dr. Vilke, noted that work his group did in 1997 refuted Dr. Reay's conclusion that prone restraint positions were dangerous.  (Doc. 248-2) at 7.  According to Dr. Vilke, Dr. Reay later formally acknowledged Dr. Vilke's research and modified his position stating that the prone restraint position is physiologically neutral.  *Id.*

     Plaintiff, however, cites a 2010 district court case in which the court rejected a study by Dr. Chan, a colleague of Dr. Vilke's, and other studies regarding the non-harmfulness of a prone position because those studies were not comparable to the case at hand.  *Weigel v. Cox,* Civ. No. 04-355 ABJ, (Doc. 128) (D. Wyo.).  Dr. Chan placed 225 pounds on the backs of prone subjects; sometimes the subjects were restrained and sometimes the subjects exercised beforehand.  *Id.* at 8. These studies showed that the weight on the subjects' backs did not compromise the subjects' ability to oxygenate their blood.  *Id.* The court, however, observed that in its case, "Weigel had

been in a collision with a Highway Patrol vehicle, was confronted by two Troopers, had been struck by a moving vehicle, attempted to flee, may have been afflicted with excited delirium, and when tackled, engaged in a powerful struggle." *Id*. at 9.  Dr. Chan acknowledged that the study situation and Weigel's situation were not comparable. *Id*.  Here, Mr. Aparicio's agitated state and his bursting through the booking cell door would, likewise, not be comparable to a study like Dr. Chan's.

In addition, Plaintiff notes that Defendants' contention that Dr. Reay's 1988 study was discredited has been addressed by several courts.  In *Johnson v. City of Cincinnati*, the court observed that a California court rejected Dr. Reay's previous studies as unreliable because Dr. Reay later conceded that prone restraint was "physiologically neutral."  39 F.Supp.2d 1013 (S.D. Ohio 1999) (citing *Price v. County of San Diego*, 990 F.Supp. 1230 (S.D. Cal. 1998)).  The court in *Johnson*, however, disagreed with the California court and determined that a study by Dr. Neuman, a colleague of Dr. Vilke and Dr. Chan's, which found the prone position to be harmless, was restricted to healthy subjects.  Moreover, that study "admitted that underlying medical conditions, intoxication, agitation, delirium, struggle, and body position could all affect respiration in a way that the study could not detect." *Id.* at 1017.  The court could not conclude that Dr. Neuman's "study debunks the theory of positional asphyxia" so as render inadmissible the testimony of the expert opining that positional asphyxia was the cause of death. *Id*.  Consequently, a battle of the experts would appropriately ensue before the jury.

Plaintiff further cites *Pirolozzi v. Stanbro* in which the court addressed the defendants' motion to exclude Dr. Spitz's testimony regarding positional asphyxiation.  2009 WL 1441070 (N.D. Ohio).  The defendants in that case presented similar arguments as here.  The court first found that "Dr. Spitz, as a board-certified pathologist, is qualified to testify as to the cause of

4

death in this case," but may not "testify as to the mental process of the decedent," i.e, "fear of impending doom." *Id*. at *4. The court then found that Dr. Spitz's (and another expert's) testimony would be reliable and admissible. The court explained:

> The simple fact that the experts do not have lab results supporting their theory is insufficient to render their testimony unreliable. If, as both doctors testify, the mental or emotional state of the subject is a factor in death by asphyxia, it would be nearly impossible to simulate the extreme circumstances of police restraint in scientific experiments. And in looking to the scientific literature, the Court finds sufficient support for the idea that excitement, fear, psychosis, and drug use all may affect the body's need for oxygen, and thereby the possibility of asphyxia. … Although these articles involved case studies rather than lab experiments, they were nonetheless published in the *American Journal of Forensic Medicine and Pathology*, a peer-reviewed publication.

*Id*. The court also decided to admit the testimony of the defendants' experts, Dr. Neuman and Dr. DiMaio, who would testify that the decedent died from excited delirium, not positional asphyxiation. The court concluded that "[u]ltimately the questions regarding the experts are questions of weight that should be given their testimony, which is the province of the jury to decide, rather than the reliability of the testimony. It is not up to the Court to decide between the battling experts." *Id*.

Finally, Plaintiff cites *Padilla v. City of Alhambra* in which the court addressed whether to admit Dr. Spitz's opinion in light of Dr. Neuman and Dr. Reay's studies. Civ. No. 05-7609 MMM (CTx) (Doc. 59) (C.D. Cal. 2007). The defendants argued that Dr. Spitz's opinion was outdated and inaccurate and, therefore, unreliable. The court, however, found Dr. Spitz's testimony to be sufficiently reliable considering his qualifications and his reliance on scientific literature. *Id*. at 12-15. The court cited several articles which describe the adverse effects of positional asphyxiation. With respect to Dr. Reay's 1988 study, the court noted that Dr. Reay had declared that he did not retract his previous study. *Id*. at 17. Dr. Reay stated that "street deaths are much different in [sic] controlled investigations" and that respiratory restriction by

5

hog-tying "has to be evaluated in the context of the event where it may be significant." *Id*. at 18. Dr. Reay maintained "that the hog-tie position is a risk factor that, combined with other conditions, may lead to death by restraint asphyxia." *Id*. The court noted that this position is supported by several recent scientific articles. *Id*. 18-19. In addition, "other courts have admitted expert testimony regarding positional asphyxia over objections nearly identical to those asserted by defendants here." *Id*. at 20.

These cases demonstrate that Dr. Spitz's opinion on positional asphyxiation as the cause of Mr. Aparicio's death is both relevant to this case and reliable. Hence, Dr. Spitz's opinion on positional asphyxiation is not subject to exclusion under Rule 702. The contradictory opinions by Dr. Spitz and Dr. Vilke will, therefore, be examined at trial in a classic battle of the experts.

IT IS ORDERED that Defendants' Motion to Strike the Expert Report [of] Dr. Werner U. Sptiz and Memorandum in Support Thereof (Doc. 248) is granted in part in that

1. Dr. Spitz can testify about whether positional asphyxiation caused Mr. Aparicio's death;

2. Dr. Spitz cannot testify regarding the effects of taser use on Mr. Aparicio;

3. Dr. Spitz cannot testify regarding any mental impressions Mr. Aparicio may have experienced during his detention at the Luna County Detention Center; and

4. Dr. Spitz can testify about the physical condition of Mr. Aparicio's body at the time of death, but Dr. Spitz cannot testify that Mr. Aparicio's "healthy" lifestyle did not contribute to his death.

_____
UNITED STATES DISTRICT JUDGE