IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES C. KRETEK, as
Personal Representative of
Christopher Aparicio, Deceased,

    Plaintiff,

vs.                                                                                      No. CIV 11-0676 KG/GBW

BOARD OF COMMISSIONERS
OF LUNA COUNTY, JOHN KREHBIEL,
JOSH ELFORD, JONATHAN CHAVEZ,
JOHN ROBERT MCGRAEL, and
YOLANDA EDWARDS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion in Limine on Admissibility of Evidence of Spoliation by Defendants, filed February 5, 2014. (Doc. 251). On February 10, 2014, Defendants filed a response. (Doc. 272). On February 20, 2014, the Court held a hearing on Plaintiff's Motion in Limine. Present at the hearing were Duff Westbrook and Nathan Gonzales, counsel for Plaintiff, and Jonlyn Martinez and Mark Komer, counsel for Defendants. Having considered Plaintiff's Motion in Limine, Defendants' response, and the argument of counsel at the February 20, 2014, hearing, the Court defers ruling on Plaintiff's Motion in Limine.

*I. Background*

Plaintiff requests that the Court enter an order declaring the admissibility of evidence that Defendants spoliated three areas of evidence: (1) tape recordings of interviews of the Luna County Detention Center (LCDC) detention officers involved in the March 3, 2011, incident

with Mr. Aparicio, (2) portions of the LCDC booking area surveillance camera recording, and (3) LCDC training materials. Plaintiff additionally requests that the Court give the jury an instruction regarding the issue of spoliation.

    *A. Relevant facts*

        *1. Recordings of interviews of LCDC employees*

On March 7, 2011, four days after the incident between Christopher Aparicio and LCDC detention officers, LCDC warden, Defendant John Krehbiel, assigned LCDC employee Andy Gilmore to conduct an internal investigation of the incident. *See* (Doc. 251-3). As part of his internal investigation, Mr. Gilmore tape recorded his interviews of the LCDC detention officers involved in the incident with Mr. Aparicio. *See* (Doc. 272-6). Copies of the recordings were saved onto Mr. Gilmore's laptop computer and onto a thumb drive.[1] *Id.* at 4. Based on these recorded interviews, Mr. Gilmore produced a six page internal investigation report. *See* (Doc. 272-6). After completing the internal investigation, Mr. Gilmore may have told Mark Jasso, the Luna County Safety Director, about the internal investigation. *Id.* (depo. at 15-16). Mr. Jasso was responsible for overseeing tort claims and potential lawsuits and gathering evidence relating to them. (Doc. 251-1) at 5. It is unclear when Mr. Jasso became aware of the internal investigation. *See* (Doc. 272-1) at 2. (depo. at 37). However, Mr. Jasso was aware that the incident with Mr. Aparicio would likely lead to litigation. (Doc. 251-1) at 7-8.

In May 2011, Mr. Jasso assumed the position of interim warden of LCDC. *Id.* at 6. As interim warden, Mr. Jasso took away Mr. Gilmore's laptop computer, which contained the interview recordings. (Doc. 251-1) at 10. Mr. Jasso "felt that some of the officers that had [laptop computers] didn't need to have those computers, so [he] asked and requested all those computers

---

[1] Neither party discusses what ultimately happened to the thumb drives with the recorded interviews.

come back. And at the time, [Mr. Jasso was] putting all [their] computers under passwords and locking them up because there was a lot of viruses." *Id.* Mr. Jasso requested that a new hard drive be put in Mr. Gilmore's computer. *Id.* Roughly ninety percent of the hard drives in LCDC's computers were removed and/or repaired by the information technology department due to viruses or other problems. (Doc. 272-2) at 2 (depo. at 6).

On November 28, 2011, Plaintiff served his First Set of Interrogatories and Request for Production on Defendants, requesting that Defendants

> [p]roduce copies of all memos, logs, photographs, video recordings, electronically stored information, letters, policies, procedures and all other documents and materials reviewed and created by all persons who investigated [Mr. Aparicio's] death and the circumstances surrounding his death for and on behalf of Luna County Detention Center.

(Doc. 251-6) at 3. On January 3, 2012, Defendants responded to the request for production stating that they did not have anything in their possession responsive to Plaintiff's request. *Id.*

On January 24, 2012, Plaintiff filed a motion to compel the production of the recorded interviews of the LCDC detention officers. (Doc. 34) at 11. Mr. Jasso requested Luna County's IT department to located Mr. Gilmore's hard drive and retrieve the interview recordings. (Doc. 272-1) at 3 (depo. at 46). Defendants retrieved the hard drive from Mr. Gilmore's computer, but the files containing the recorded witness interviews were not on the hard drive. *Id.*

Plaintiff next filed a request for production for the hard drive that was removed from Mr. Gilmore's computer. (Doc. 251-7) at 2. Defendants responded to the request for production by objecting as unduly burdensome. *Id.* On October 11, 2012, Plaintiff filed a motion to compel the production of the hard drive from Mr. Gilmore's computer. (Doc. 122). Defendants responded,

> [t]he Defendant [*sic*] located all relevant lap top hard drives and conducted a word search on all folders and files on all relevant laptop hard drives using the key word "A Report." However, despite conducting this search, the Defendant [*sic*] was unable to locate the information requested.

3

(Doc. 251-8) at 2. Plaintiff, therefore, has never received a copy of the recorded interviews of LCDC detention officers.

### 2. Portions of the LCDC surveillance camera recording

After the incident, Defendant Krehbiel, LCDC warden at the time of the incident, asked LCDC employee Carl Sanner to pull video recordings from the surveillance camera in the LCDC booking area. (Doc. 272-7) at 2 (depo. at 6). Mr. Krehbiel also told Mr. Sanner the time that the incident began. *Id.* (depo. at 7). Mr. Sanner went to the LCDC control room, pulled the video tape, and made a copy of a portion of the recording. *Id.* (depo. at 6). According to Defendants, Mr. Sanner copied twelve minutes and forty-five seconds of video of Mr. Aparicio in the booking area beginning before the incident and terminating after the incident ended. Mr. Sanner testified that he did not pull the entire video of Mr. Aparicio at LCDC because, "We normally don't. All of the times I've pulled videos for different things, it usually just starts right before the incident starts until the incident stops." *Id.* (depo. at 7).

### 3. Training materials

According to Plaintiff, Mr. Jasso confiscated an LCDC laptop computer which contained materials and Powerpoint presentations used to train LCDC detention officers on a variety of subjects, including positional asphyxia. Defendants could not locate or produce the training materials which were on the computer. Plaintiff provides an email written on January 9, 2013, from Jonlyn Martinez to Duff Westbrook in which Ms. Martinez writes, "The County was unable to locate the actual power points used during the training you requested." (Doc. 251-9).

### B. Plaintiff's Motion in Limine and Defendants' response

First, Plaintiff seeks to introduce evidence that Defendants spoliated the recorded interviews of the LCDC detention officers. Plaintiff contends that Defendants knew or suspected

that they would be sued for the incident involving LCDC detention officers and Mr. Aparicio. Plaintiff also contends that the recorded interviews are "indisputably relevant to the material issues in this case." (Doc. 251) at 2. Finally, Plaintiff argues that "[t]he recorded witness interviews were therefore been [*sic*] lost or destroyed while in the custody of the Defendants under circumstances which support the inference the Defendants intentionally lost or destroyed those recordings." *Id.* at 4.

Defendants respond that, based on the conclusions in Mr. Gilmore's internal investigation report, "the audio recordings would only help the Defendants in this matter." (Doc. 272) at 3. Defendants additionally argue that Plaintiff has no evidence that Mr. Jasso was aware that Mr. Gilmore's computer contained the interview recordings or that he directed anyone to destroy or lose them. Instead, Defendants contend, the evidence indicates that LCDC had virus and other computer issues that were addressed by Mr. Jasso. *Id.* Thus, Defendants argue, a reasonable explanation exists as to why the files of the recorded interviews of the LCDC detention officers could not be located.

Regarding the LCDC surveillance camera recording, Plaintiff seeks to introduce evidence that Defendants chose not to preserve all of the surveillance footage showing Mr. Aparicio at LCDC. According to Plaintiff, the portions that were not preserved showed Mr. Aparicio being cooperative and compliant.

Defendants respond that there is a reasonable explanation for the missing video footage. According to Defendants, Mr. Sanner copied the portion of the LCDC surveillance video that he believed was required of him. Defendants further contend that Mr. Sanner "used his judgment and was not instructed to delete or destroy any information." (Doc. 272) at 4. Finally, Defendants are not able to produce the footage now because the video surveillance system records over

images that are 90 days old. Therefore, by the time Defendants received the Plaintiff's discovery request, all images of Mr. Aparicio stored on LCDC's computers had been recorded over and only the portion saved by Mr. Sanner remains.

Finally, regarding the LCDC training materials, Plaintiff seeks to introduce evidence that Defendants chose not to preserve the training materials located on the computer. Defendants respond that they produced all training materials they could locate. Further, Defendants claim that the incident giving rise to this lawsuit and the nature of Plaintiff's claims "could not possibly have been known to anyone at the time the training was conducted months or years prior to the incident at issue in this litigation." (Doc. 272) at 4. Additionally, Defendants contend that Plaintiff has no evidence that anyone intentionally lost or destroyed the training material as a result of Plaintiff's lawsuit.

## II. Discussion

New Mexico Uniform Jury Instruction 13-1651 is given in cases where an adverse party has lost, destroyed or altered evidence. This instruction would state:

> Plaintiff says that evidence within the control of the Defendants was lost, destroyed or altered. If you find that this happened, without a reasonable explanation, you may, but are not required to, conclude that the lost, altered or destroyed evidence would be unfavorable to Defendants.

The Tenth Circuit Court of Appeals gives the following guidance on instructing the jury on spoliation:

> the general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. The adverse inference must be predicated on the bad faith of the party destroying the records. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.

*Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (citations omitted).

Considering the standard put forth by the Tenth Circuit Court of Appeals, the Court defers ruling on Plaintiff's Motion in Limine and will make a decision on March 3, 2014, before opening arguments, in order to allow Plaintiff to make a showing that Defendants acted in bad faith in destroying the evidence at issue.

IT IS ORDERED that the Court defers ruling on Plaintiff's Motion in Limine on Admissibility of Evidence of Spoliation by Defendants (Doc. 251) and will make a decision on March 3, 2014, before opening arguments.

_____
UNITED STATES DISTRICT JUDGE